# In the United States Court of Federal Claims

No. 21-1570C

(Filed:  May 25, 2022)

|  |  |
|---|---|
| **IAP WORLDWIDE SERVICES, INC.,** | ) |
| *Plaintiff,* | ) |
| **v.** | ) |
| **THE UNITED STATES,** | ) |
| *Defendant,* | ) |
| **and** | ) |
| **VECTRUS SYSTEMS CORPORATION,** | ) |
| *Defendant-Intervenor.* | ) |

*Kara L. Daniels*, Arnold & Porter Kaye Scholer LLP, Washington, D.C., for Plaintiff.  Of counsel were *Thomas A. Pettit* and *Aime JH Joo.*

*Tanya B. Koenig*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  With her on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director.  Of counsel was *Lieutenant Colonel Seth Ritzman*, Contract Litigation & Intellectual Property Division, United States Army Legal Services Agency, Fort Belvoir, VA.

*Adam K. Lasky*, Seyfarth Shaw LLP, Seattle, WA, for Defendant-Intervenor.  Of counsel were *Edward V. Arnold*, *Stephanie B. Magnell*, and *Bret C. Marfut*, Seyfarth Shaw LLP, Washington, D.C.

## OPINION AND ORDER

*SOLOMSON*, **Judge.**

This Court previously concluded that Plaintiff, IAP Worldwide Services, Inc. ("IAP"), succeeded on the merits of Count I of its amended complaint.  ECF No. 54; *IAP Worldwide Servs., Inc. v. United States*, -- Fed Cl. --, 2022 WL 1021781, at *46 (2022).

Specifically, the Court held that while Defendant, the United States, acting by and through the U.S. Department of the Army (the "Army"), as a general matter, has "discretion to decline to conduct discussions here," the Defense Federal Acquisition Regulation Supplement's ("DFARS") "presumption favoring discussions must be overcome with reasoned decision-making not reflected in the administrative record at issue." *IAP Worldwide Servs.*, 2022 WL 1021781, at *39 (discussing DFARS 215.306). In essence, this Court concluded that the Army failed to properly apply DFARS 215.306 in deciding not to establish a competitive range and, thus, not to engage in discussions with offerors, including IAP. *Id.* at *35–39.

Because of the inadequate record regarding appropriate relief, however, the Court was "unprepared . . . to order the government to go back and redo its procurement process," or to otherwise decide the question of equitable or monetary relief absent "[a]dditional factual development." *Id.* at *50 (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004)). Having "reserve[d] the question of appropriate relief in this case pending further briefing," *id.* at *53, the Court ordered supplemental briefing and permitted the submission of additional factual declarations to support the parties' respective positions, ECF No. 52. The parties filed their respective supplemental briefs and accompanying declarations on April 11, 2022. ECF No. 55 ("Pl. Supp. Br."); ECF No. 56 ("Def. Supp. Br."); ECF No. 57 ("Intv. Supp. Br.").

The parties' positions could scarcely be further apart. IAP contends that it is entitled to injunctive relief "requir[ing] the Army to apply DFARS 215.306 correctly and proceed accordingly." Pl. Supp. Br. at 10. IAP also argues that this Court should award bid and proposal costs "in addition to the tailored injunctive relief requested." *Id.* The government opposes IAP across the board, arguing that "in balancing the hardships of both parties, the Court [should] deny IAP *any* injunctive, monetary, or other relief." Def. Supp. Br. at 1 (emphasis added). To the extent the Court "consider[s] a remand," the government urges "the Court [to] refrain from ordering any actions that would interfere with the Army's lawful discretion." *Id.* at 2.

Defendant-Intervenor, Vectrus Systems Corporation ("Vectrus"), similarly opposes injunctive relief, but suggests that

> [a] "less drastic remedy" exists: the Court could stay judgment and remand (without injunction) pursuant to [Rule] 52.2(a) [of the Rules of the United States Court of Federal Claims ("RCFC")], for the [Army] to determine and document whether . . . discussions should be conducted under a proper

application of DFARS 215.306, and[,] if so[,] whether IAP
should be included in the competitive range.

Intv. Supp. Br. at 5 (quoting *Medline Indus., Inc v. United States*, 155 Fed. Cl. 522, 541 (2021),
and arguing that a remand would preserve the possibility of an injunction). Vectrus's
view is that the propriety of an award of bid and proposal costs depends on the remand
results; specifically, the recovery of such costs depends on whether IAP can demonstrate
that it incurred "a needless expense." *Id.* at 10 (quoting *A Squared Joint Venture v. United
States*, 149 Fed. Cl. 228, 232 (2020)).

Ultimately, the Court concludes that while injunctive relief is not warranted here,
Vectrus's alternative suggestion of a limited remand (*i.e.*, without an injunction) is
appropriate given the relative equities. In that regard, a plaintiff's burden to justify a
remand is considerably less demanding than what is necessary to support an injunction
ordering the government to begin the procurement process entirely afresh, to conduct
discussions, or otherwise precluding the government from proceeding with a challenged
contract award. The Court orders no such injunctive relief at this time. The Court further
concludes that, at least for now, IAP is not entitled to bid and proposal costs.

## I.     This Court Has Broad Discretion to Fashion Appropriate Equitable Relief in Procurement Action Cases Pursuant to 28 U.S.C. § 1491(b)

The parties' differing positions implicitly raise important questions about the
nature of the equitable remedies at this Court's disposal in successful actions pursuant to
28 U.S.C. § 1491(b). Because the parties debate the availability and parameters of the
relief this Court may (or should) order in this case, the Court first reviews its various
equitable powers and the distinctions between them. Outside of 28 U.S.C. § 1491(b)
actions and Contract Disputes Act (CDA) cases, *see* 41 U.S.C. §§ 7101–7109,[1] "[t]he Tucker
Act does not generally confer jurisdiction for actions seeking declaratory or injunctive
relief." *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017); *see also Maine Cmty.
Health Options v. United States*, 590 U.S. ––, 140 S. Ct. 1308, 1330 (2020) ("[T]he Court of
Federal Claims 'does not have the general equitable powers of a district court to grant

---

[1] The Tucker Act, as amended, separately provides this Court with "jurisdiction to render
judgment upon any claim by or against, or dispute with, a contractor arising under [the CDA]
*including . . . nonmonetary disputes*." 28 U.S.C. § 1491(a)(2) (last sentence) (emphasis added); *see
also Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1271 (Fed. Cir. 1999) (discussing
availability of declaratory relief in CDA cases); *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 750 (Fed. Cir.
1993) ("Congress enacted the Federal Courts Administration Act of 1992 . . . , Pub. L. No. 102-572,
106 Stat. 4506," which "expanded the jurisdiction of the Court of Federal Claims to embrace some
nonmonetary disputes"). The CDA's provisions are not at issue here.

prospective relief[.]'" (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988))).[2] Nevertheless, there are two statutory provisions that provide this Court with equitable relief powers in actions filed pursuant to 28 U.S.C. § 1491(b).

First, the Tucker Act's Remand Statute[3] generally provides that "[i]n *any* case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."  28 U.S.C. § 1491(a)(2) (emphasis added); *see also* RCFC 52.2 ("Remand a Case").[4]

Second, in actions specifically challenging a government agency's procurement decision, this Court's power to order relief pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874–75 (1996), is codified at 28 U.S.C. § 1491(b)(2): "To afford relief in such an action, the courts may award *any relief that the court considers proper*, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."  28 U.S.C. § 1491(b)(2) (emphasis added).

Although one might be tempted to read the remand language in § 1491(a) as applying only to claims filed pursuant to that subsection, § 1491(b)'s use of the broad statutory language of "*any* relief,"[5] particularly when read in conjunction with § 1491(a)(2)'s express language of "*any* case within [the Court's] jurisdiction," leads this Court to conclude that our remand power extends to claims filed under § 1491(b).  28 U.S.C. § 1491(a)(2), (b)(2) (emphasis added); *see also Harmonia Holdings Grp., LLC v. United*

---

[2] "Unlike the district courts . . . the [Court of Federal Claims] has no general power to provide equitable relief against the Government or its officers."  *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011).  And, even in the district courts, the Declaratory Judgment Act, 28 U.S.C. § 2201 — which does not apply in the Court of Federal Claims — "creates a remedy, not a substantive cause of action."  *ACA Fin. Guar. Corp. v. City of Buena Vista*, 298 F. Supp. 3d 834, 843 (W.D. Va. 2018), *aff'd*, 917 F.3d 206 (4th Cir. 2019); *see also Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) ("Section 2201 of Title 28, the Federal Declaratory Judgment Act, does not provide any basis for jurisdiction of the Court of Federal Claims.").

[3] Act of Aug. 29, 1972, Pub. L. No. 92-415, 86 Stat. 652; *see also United States v. Testan*, 424 U.S. 392, 404 (1976) (discussing the "remand statute" and holding that it "applies only to cases already within the [Court of Federal Claims'] jurisdiction").  The Remand Statute is discussed in more detail *infra* Section I.C.3.

[4] RCFC 52.2 closely tracks the language of 28 U.S.C. § 1491(a)(2).

[5] *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) ("We have previously noted that '[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (alteration in original) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997))); *cf. Brown v. Dep't of Health & Hum. Servs.*, 878 F.2d 1446 (Fed. Cir. 1989) (per curiam) (interpreting "any" to mean "all").

*States*, 20 F.4th 759, 767 (Fed. Cir. 2021) ("The Court of Federal Claims has relatively broad authority under 28 U.S.C. § 1491(b)(2) to fashion a remedy . . . ."); *DynCorp Int'l, LLC v. United States*, 10 F.4th 1300, 1316 (Fed. Cir. 2021) (approving an agency's "price-reasonableness analysis on remand" where the agency "made new determinations" and still "declined to revisit the overall award"); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338–39 (Fed. Cir. 2001) (acknowledging the possibility of remand in "government procurement" cases pursuant to § 1491(b)).

Accordingly, the Tucker Act's plain language demonstrates that in an action pursuant to 28 U.S.C. § 1491(b), this Court may issue at least three types of nonmonetary, equitable relief[6] orders (or a combination thereof); specifically, this Court may: (1) remand a matter to an agency for further consideration; (2) issue declaratory relief; and/or (3) issue injunctive relief. Those are distinct equitable relief mechanisms[7] — with varying purposes, effects, and requirements — but the lines between them are incapable of being drawn with scientific precision. This Court thus explains each form of relief, in reverse order, and then considers how they should be applied in this case.

## A. The Court's Authority to Issue Injunctive Relief

### 1. General Principles and Parameters

"[A]n injunction either mandates or prohibits particular conduct." *PGBA*, 389 F.3d at 1228 n.6 (citing *Perez v. Ledesma*, 401 U.S. 82, 124 (1971)); *see also Birmingham Fire Fighters*

---

[6] *See Remedy*, Black's Law Dictionary (11th ed. 2019) (defining "equitable remedy" as "[a] remedy, usu[ally] a nonmonetary one such as an injunction or specific performance, obtained when available legal remedies, usu[ally] monetary damages, cannot adequately redress the injury. . . . Also termed *equitable relief* . . . ."); *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 283 (7th Cir. 1993) ("[D]amages [are] the standard 'legal' (as distinct from equitable) remedy.").

[7] "Declaratory and injunctive relief are equitable remedies." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 2013 WL 3463192, at *3 (D. Nev. July 9, 2013) (citing *Sierra Club v. U.S. Dep't of Transp.*, 245 F. Supp. 2d 1109, 1114 (D. Nev. 2003)). Such equitable relief has also been described as "specific relief." *Bowen*, 487 U.S. at 915 (Scalia, J., dissenting) (differentiating between "money damages" and "specific relief"). An order remanding a matter to a federal government agency also constitutes equitable relief. *See Perry v. United States*, 2014 WL 7366083, at *3 (Fed. Cl. Dec. 23, 2014) (describing an order "pursuant to the Remand Act" as "equitable relief"); *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019) (characterizing remand without vacatur as an "equitable remedy"); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1289–90 (11th Cir. 2015) (citing, among other cases, *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944), for the proposition that "the federal courts possess broad discretion to fashion an equitable remedy" and concluding that whether to remand, with or without vacatur, "falls within our broad equitable discretion"); *Pac. Rivers Council v. Shepard*, 2012 WL 950032, at *5 (D. Or. Mar. 20, 2012) ("[V]acatur and remand are commonly-employed equitable remedies under the APA[.]").

*Ass'n 117 v. City of Birmingham*, 603 F.3d 1248, 1254 (11th Cir. 2010) ("[T]he classic definition of an injunction" is "a clear and understandable directive from the [trial] court, . . . enforceable through contempt proceedings," giving "some or all of the substantive relief sought in the complaint." (quoting *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1358 (11th Cir. 2008))); *Sierra Nev. Corp. v. United States*, 107 Fed. Cl. 735, 761 (2012) ("An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions." (quoting *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987))). Generally, "[a]n injunction, by definition, seeks to stop an *ongoing* injustice or to *prevent* future injury." *Gomez v. Dade Cty. Fed. Credit Union*, 610 F. App'x 859, 863 (11th Cir. 2015) (emphasis added).[8]

Although a trial court has "considerable discretion in framing injunctions," that discretion is cabined. *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 169 (3d Cir. 2011). That is because "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *cf. Eracent, Inc. v. United States*, 79 Fed. Cl. 427, 432 (2007) ("A permanent injunction is extraordinary relief and requires stronger evidence than that provided by plaintiff."). Accordingly, "injunctive relief should be no broader than necessary to provide full relief to the aggrieved party." *Meyer*, 648 F.3d at 170 (quoting *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 888 (3d Cir. 1986)); *see also Free Speech Coal., Inc. v. Att'y Gen.*, 974 F.3d 408, 430 (3d Cir. 2020) (critiquing the district court's grant of an "injunction, an extraordinary remedy," as "afford[ing] more relief than necessary"); *Consolidation Coal Co. v. Disabled Miners*, 442 F.2d 1261, 1267 (4th Cir. 1971) (calling an injunction an "extraordinary writ" that "should be tailored to restrain no more than what is reasonably required to accomplish its ends").

When there is a question about whether a trial court's order constitutes an injunction, "its characterization is not controlling"; rather, "[t]he true nature of the trial court's order is what matters[.]" *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992) ("[A]n injunction is an order requiring a party to do or refrain from doing something that is an integral part of the very matter in litigation . . . ." (quoting *NTN Bearing Corp. of Am. v. United States*, 892 F.2d 1004, 1005 (Fed. Cir. 1989))).

---

[8] *See also Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) ("A judgment issued by a court in the exercise of its equitable . . . jurisdiction is called a decree, and when a decree commands or prohibits conduct, it is called an injunction."); *United States ex rel. Lutz v. United States*, 853 F.3d 131, 139 (4th Cir. 2017) ("Under the general definition, an injunction is a 'court order commanding or preventing an action.'" (quoting *Injunction*, Black's Law Dictionary (10th ed. 2014))); *Moglia v. Pac. Emps. Ins. Co. of N. Am.*, 547 F.3d 835, 838 (7th Cir. 2008) ("An injunction is an order of specific performance on the merits, a remedy for a legal wrong.").

6

### 2. Injunctions in Administrative Procedure Act Cases

In *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 861–73 (D.C. Cir. 1970), the D.C. Circuit held for the first time that government procurement decisions could be challenged pursuant to the Administrative Procedure Act (APA), Pub. L. No. 89–554, 80 Stat. 378 (1966). While this Court "lacks the general federal question jurisdiction of the district courts, which would allow it to review [an] agency's actions and to grant relief pursuant to the [APA]," *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997),[9] Congress, in amending the Tucker Act via ADRA, "extend[ed] the jurisdiction of the Court of Federal Claims to include . . . cases brought under the APA by disappointed bidders, such as the plaintiff in *Scanwell*," *Am. Fed'n of Gov't Emps., AFL-CIO v. United States* (*AFGE*), 258 F.3d 1294, 1302 (Fed. Cir. 2001); *see also Impresa*, 238 F.3d at 1331–32 (explaining that "cases upholding district court APA review of procurement decisions are commonly referred to as the *Scanwell* line of cases" and that "[u]nder the ADRA, all bid protest actions under the APA are now reviewed under the standards applied in the *Scanwell* line of cases"). Because ADRA sunset district court jurisdiction over such cases as of January 1, 2001,[10] ADRA effectively transferred *Scanwell* jurisdiction to this Court. *See AFGE*, 258 F.3d at 1300 ("It is the intention . . . to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to [APA] review in the federal district courts and the Court of Federal Claims." (first alteration in original) (quoting H.R. Rep. No. 104-841, at 10 (1996) (Conf. Rep.))).[11]

Accordingly, familiarity with APA jurisprudence helps set the stage for understanding the relief options available to this Court in actions pursuant to 28 U.S.C. § 1491(b). *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) ("In bid protest cases filed under the ADRA, the court implements this APA standard [of

---

[9] *See also Martinez v. United States*, 333 F.3d 1295, 1313 (Fed. Cir. 2003) (en banc) ("[T]he Court of Federal Claims lacks APA jurisdiction."); *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005) ("[N]o APA review is available in the Court of Federal Claims.").

[10] ADRA, Pub. L. No. 104–320, § 12(d), 110 Stat. 3870, 3875 (1996), as enacted, provided that: "The jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) of title 28, United States Code . . . shall terminate on January 1, 2001 unless extended by Congress."

[11] *See also Validata Chem. Servs. v. U.S. Dep't of Energy*, 169 F. Supp. 3d 69, 80 (D.D.C. 2016) ("ADRA's legislative history . . . evinces an intent to transfer the jurisdiction over *Scanwell* claims to the Court of Federal Claims . . . ."); *Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 560 (2021) ("ADRA's legislative history reflects some intent to transfer the [APA] jurisdiction over *Scanwell* claims to the Court of Federal Claims . . . .").

review] by applying the standard as previously interpreted by the district courts in the so-called *Scanwell* line of cases . . . .").  The APA  provides, in relevant part, as follows:

> The reviewing court *shall—*
>
> . . . .
>
> (2) hold unlawful *and set aside agency action*, findings, and conclusions found to be—
>
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]

5 U.S.C. § 706(2)(A) (emphasis added).[12]

Notwithstanding the APA's "shall . . . set aside" language, 5 U.S.C. § 706(2)(A), there is no shortage of debate regarding whether a successful APA action requires a district court to issue injunctive relief — including, at a minimum, the vacatur of the challenged agency action — or whether the district court retains discretion to issue less coercive equitable relief (*e.g.*, a declaratory judgment or remand without vacatur).[13]  The United States Court of Appeals for the Ninth Circuit, for example, explained in *National Wildlife Federation v. Epsy* that a district court "is not required to set aside every unlawful agency action," but rather "[t]he court's decision to grant or deny injunctive or

---

[12] In contrast to the Tucker Act, "the APA generally waives sovereign immunity from nonmonetary claims against federal agencies" and "authorizes a court to either compel or set aside agency action (*i.e.*[,] to award equitable relief) but does not authorize money damages." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 673 (9th Cir. 1993) (citing 5 U.S.C. § 706); *see also* 5 U.S.C. § 702 (authorizing actions "seeking relief other than money damages").

[13] *See* Stephanie J. Tatham, Admin. Conf. of the U.S., *The Unusual Remedy of Remand Without Vacatur* 1 (2014), https://www.acus.gov/sites/default/files/documents/Remand%20Without%20Vacatur%20Final%20Report.pdf ("[R]emand[] [of] the agency decision without vacatur . . . appears to have arisen relatively recently and as a matter of judicial instigation. . . . [It] is . . . remarkable . . . because it can permit agency decisions to remain in effect despite errors that are prejudicial to the interests of challenging parties."); Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, 53 Duke L.J. 291, 295 (2003) ("A court's decision, after full consideration, to pronounce an agency action illegal, but to allow the action to continue in effect anyway, is sometimes known as 'remand without vacation.'"); Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 308 (2017) ("Because the Supreme Court has declined to address its legality, remand without vacatur has become a routine part of administrative law even as it remains legally vulnerable."); Benjamin Eidelson, *Reasoned Explanation and Political Accountability in the Roberts Court*, 130 Yale L.J. 1748, 1801 (2021) (explaining that remand without vacatur "has been attacked on two main grounds":  (1) because "it is said to conflict with the APA's instruction that a reviewing court 'shall' set aside an unlawful action"; and (2) because "it is thought to leave agencies with little incentive to promptly address the errors that the court has identified").

declaratory relief under APA is controlled by principles of equity" and must consider "competing claims of injury."   45 F.3d 1337, 1343 (9th Cir. 1995) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).  In a subsequent decision, however, the Ninth Circuit held that "[u]nder the APA, we *must* set aside [an agency]'s action if it [is] 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 690–91 (9th Cir. 2007) (emphasis added) (quoting 5 U.S.C. § 706(2)(A)) (declaring agency's decision arbitrary, capricious, and contrary to law and setting aside agency action, without discussing the injunctive relief factors or the need for an injunction).[14]

Echoing the latter Ninth Circuit decision, the United States Court of Appeals for the District of Columbia Circuit has held that the "ordinary practice is to vacate" arbitrary and capricious agency action.  *Am. Bankers Ass'n*, 934 F.3d at 673–74 (quoting *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019)).[15]  Indeed, several D.C. Circuit judges view vacatur as a mandatory remedy.  *See Checkosky v. SEC*, 23 F.3d 452, 491–92 & n.35 (D.C. Cir. 1994) (Randolph, J., separate opinion) (cataloging cases supporting the proposition that "our decisions uniformly—and quite firmly—hold that [5 U.S.C.] § 706(2)(A) requires us to vacate the arbitrary and capricious agency action" and explaining that "[o]nce a reviewing court determines that the agency has not adequately explained its decision, the [APA] requires the court—in the absence of any contrary statute—to vacate the agency's action"); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 757 (D.C. Cir. 2002) (Sentelle, J., dissenting) (explaining that the APA requires vacatur "in the clearest possible terms" (quoting *Checkosky*, 23 F.3d at 492)).[16]

In any event, and notwithstanding that "remand without vacatur has been viewed with some skepticism," *Haw. Longline Ass'n v. Nat'l Marine Fisheries Serv.*, 288 F. Supp. 2d 7, 11 (D.D.C. 2003),[17] "most . . . courts" agree that the APA does not require a court to

---

[14] *See also Nw. Env't Def. Ctr.*, 477 F.3d at 680–81 (noting that while "Section 706(2) of the APA gives us the *equitable power* to 'set aside' [agency] action[,] . . . if we conclude that [the agency] violated the APA by acting arbitrarily, capriciously, or contrary to law, we have the ability *and indeed the juristic duty* to remedy [the agency's] violation" (emphasis added)).

[15] At least one Ninth Circuit decision reached a conclusion similar to that of the D.C. Circuit.  *See All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018) ("Although not without exception, *vacatur* of an unlawful agency action normally accompanies a remand." (citing *Alsea Valley All. v. Dep't of Com.*, 358 F.3d 1181, 1185 (9th Cir. 2004))).

[16] *See also Radio Television S.A. de C.V. v. FCC*, 130 F.3d 1078, 1083 (D.C. Cir. 1997) ("When we hold that an agency has not provided an adequate explanation for its action, the 'practice of the court is ordinarily to vacate the [action].'  Indeed, some contend that this is the *only* option available." (alteration in original) (quoting *Ill. Pub. Telecomms. Ass'n v. FCC*, 123 F.3d 693, 693 (D.C. Cir. 1997))).

[17] *See also Alabama v. Ctrs. for Medicare & Medicaid Servs.*, 780 F. Supp. 2d 1219, 1232 n.11 (M.D. Ala. 2011) ("The Court recognizes that there is some dispute about whether or not a court has

issue an injunction setting aside improper agency action, but rather the "remedy of remand without vacatur is within a reviewing court's equity powers under the APA," *Black Warrior Riverkeeper*, 781 F.3d at 1289–90 (quoting *Sierra Club*, 526 F.3d at 1369 (Kravitch, J., concurring in part and dissenting in part)).  In other words, under the APA, "the federal courts possess broad discretion to fashion an [appropriate] equitable remedy."  *Id.* (first citing *Hecht Co.*, 321 U.S. at 329; and then citing *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939)).

### 3.  A Successful Plaintiff in a § 1491(b) Case Is Not Automatically Entitled to Injunctive Relief

Even assuming the APA were read to require — or to *ordinarily* require — a court to vacate arbitrary and capricious agency action, a successful plaintiff in an action pursuant to 28 U.S.C. § 1491(b) is *not* automatically entitled to such injunctive relief.  That is true notwithstanding that ADRA amended the Tucker Act to require that "[i]n any action under this subsection, the courts shall review the agency's decision pursuant to the [APA] standards set forth in section 706 of title 5."  28 U.S.C. § 1491(b)(4).

In *PGBA, LLC v. United States*, the United States Court of Appeals for the Federal Circuit, our appellate court, squarely addressed that very issue, framing it as "whether the reference in 28 U.S.C. § 1491(b)(4) to 5 U.S.C. § 706 merely incorporates the [APA's] arbitrary and capricious standard of review from [§] 706(2)(A), or whether it means that the reviewing court must set aside any action it finds arbitrary or capricious without consideration of the relative harms of such action."  389 F.3d at 1225.  The Federal Circuit answered this question in the negative, concluding that "section 1491(b)(4) only incorporates the [APA's] standard of review of section 706(2)(A) and therefore does not deprive a court of its equitable discretion in deciding whether injunctive relief is appropriate."  *Id.* at 1225–26.  Put differently, "in a bid protest action, section 1491(b)(4) does *not* automatically require a court to set aside an arbitrary, capricious, or otherwise unlawful contract award."  *Id.* at 1226 (emphasis added).[18]

Among the reasons for the Federal Circuit's decision were (1) that the plain language of the Tucker Act, as amended by ADRA, is merely permissive, not

---

discretion to remand without vacating."), *aff'd*, 674 F.3d 1241 (11th Cir. 2012).  The remand remedy is discussed *infra* Section I.C.

[18] *See also* Tatham, *supra* note 13, at 28 (analogizing *PGBA* to a case of "remand without vacatur"). *But cf. Diamond Sawblades Mfrs. Coal. v. United States*, 33 C.I.T. 1422, 1446 (2009) ("[A] judicial holding that an agency decision is unlawful essentially constitutes a vacatur of that decision . . . ."), *aff'd*, 626 F.3d 1374 (Fed. Cir. 2010); *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) ("Failure to provide the necessary clarity for judicial review requires that the action be vacated.").

mandatory,[19] and (2) that "there is no evidence that Congress intended to abolish the tradition of equitable discretion in issuing injunctive relief when it enacted . . . ADRA." *PGBA*, 389 F.3d at 1226–27.  In so holding, the Federal Circuit rejected the successful plaintiff's contention that "Congress enacted section 1491(b) in order to give the Court of Federal Claims [APA] jurisdiction over bid protests and thereby eliminate the discretion district courts had historically exercised under [the APA] in determining whether to set aside arbitrary and capricious awards."  *Id.* at 1225 & n.4 (explaining that even pursuant to the APA, "[u]nder *Scanwell*, if a contract award was determined to be improper, injunctive relief did not issue as a matter of course").

In sum, as a precondition for vacating an agency's contract award or issuing a similarly coercive order, this Court must apply the standard injunctive relief factors discussed at some length in the Court's initial decision in this case.  *See IAP Worldwide Servs.*, 2022 WL 1021781, at *46–49.  Those factors require a plaintiff to show that:  (1) it has actually succeeded on the merits; (2) it will suffer irreparable harm if the procurement is not enjoined; (3) if the procurement action is not enjoined, the harm to plaintiff will outweigh the harm to the government and third parties; and (4) granting injunctive relief serves the public interest.  *PGBA*, 389 F.3d at 1228–29; *see also Monsanto*, 561 U.S. at 157–59 ("It is not enough for a court considering a request for injunctive relief [in an APA case] to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test . . . .");  *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).

## B. The Court's Authority to Issue Declaratory Relief (in Comparison to Injunctive Relief)

As with injunctive relief, Congress has expressly empowered this Court to issue declaratory relief in § 1491(b) cases.  *See* 28 U.S.C. § 1491(b)(2).  "Declaratory relief . . . not only functions as an adjudicatory device but serves a preventive purpose as well."  *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003).  In issuing such relief, "[t]he court, in effect, declares the parties' legal rights and responsibilities, so that they may conform their future conduct to the law and minimize the risk of future injury."  *Pediatrix Med. Grp. of Fla., Inc. v. Aetna Inc.*, 2018 WL 4997092, at *6 (S.D. Fla. Aug. 27, 2018) (citing *Eisenberg v. Standard Ins. Co.*, 2009 WL 1809994, at *3 (S.D. Fla. Jun. 25, 2009)).  Declaratory relief thus not only "permits the court . . . to define the legal relationships and adjust the attendant rights and obligations at issue between the parties so as to avoid the dispute escalating into additional wrongful conduct" but also "avert[s] greater damages and multiple actions and collateral issues

---

[19] "To afford relief in [a bid protest-type] action, the court[] *may* award any relief that the court considers proper, including declaratory and injunctive relief . . . ."  28 U.S.C. § 1491(b)(2) (emphasis added).

involving not only the original litigants but potentially other third parties." *Dow Jones*, 237 F. Supp. 2d at 405.[20]

      Declaratory relief is particularly appropriate for the resolution of pure legal issues:

> The archetypal situation calling for declaratory relief is a dispute over contract interpretation. By issuing a declaration, the court clarifies the respective duties and obligations of the parties to an agreement before their dispute ripens into an actual breach of the agreement resulting in damages. But, critically, the reason contract interpretation lends itself so well to declaratory relief is because it constitutes a purely legal analysis (at least where an unambiguous contract is concerned). On the other hand, declaratory relief is inappropriate where it requires the court to make factual determinations regarding past conduct.

*Pediatrix Med. Grp.*, 2018 WL 4997092, at *6 (citations omitted). This reasoning surely applies with equal force to the interpretation of statutes, regulations, and solicitations.[21]

      The demarcation between injunctive and declaratory relief is blurry. *See Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, 542 F. Supp. 3d 719, 723 (N.D. Ohio 2021) ("Notwithstanding the vintage of declaratory judgments, much about their basic application and function remains unclear."), *appeal dismissed*, 2021 WL 4305879 (6th Cir. Sept. 21, 2021). While one district court has explained that "[a] declaratory judgment is an equitable remedy in the nature of an injunction," *id.*, the consensus is that

---

[20] Declaratory relief is therefore a "prospective remedy intended to resolve or mitigate disputes that may yield later litigation." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018); *see also Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (noting that a declaratory judgment provides "prospective relief"); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 145 F. Supp. 2d 1168, 1172 n.2 (N.D. Cal. 2001) (purpose of declaratory relief is to "clarify the present and ongoing rights and obligations of the parties"); *Parker v. Citizen's Bank, N.A.*, 2019 WL 5569680, at *4 (S.D.N.Y. Oct. 29, 2019) ("The purpose of declaratory relief is to relieve litigants from the ongoing or imminent harm they may suffer when their rights vis-à-vis each other are uncertain.").

[21] *See Black & Veatch Corp. v. Modesto Irrigation Dist.*, 827 F. Supp. 2d 1130, 1148 (E.D. Cal. 2011) ("It is elementary that questions relating to the formation of a contract, its validity, its construction and effect, excuses for nonperformance, and termination are proper subjects for declaratory relief." (quoting *Caira v. Offner*, 24 Cal. Rptr. 3d 233, 241–42 (Ct. App. 2005))); *cf. Cox Commc'ns PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1282 (S.D. Cal. 2002) ("[D]eclaratory judgment is appropriate where local regulations may violate [a federal statute]."); *Oneida Tribe of Indians of Wis. v. Wisconsin*, 951 F.2d 757, 760 (7th Cir. 1991) (noting that declaratory judgment is appropriate to obtain judicial interpretation of statute).

"[i]njunctions and declaratory judgments are different remedies," *Ulstein*, 833 F.2d at 1055, such that "a declaratory judgment merits separate consideration from a request for injunctive relief," *Skyworks*, 542 F. Supp. 3d at 725.[22]

In distinguishing between declaratory and injunctive relief, most courts appear to focus on the coerciveness of the order: while "[a]n injunction is a *coercive order* by a court directing a party to do or refrain from doing something, and applies to future actions[,] [a] declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action." *Ulstein*, 833 F.2d at 1055 (emphasis added); *see also Ledesma*, 401 U.S. at 111–13 (Brennan, J., concurring in part and dissenting in part) (discussing the legislative history of the Declaratory Judgment Act and noting that, according to the Senate Report, "[t]he declaratory judgment differs in no essential respect from any other judgment except that it is not followed by a decree for damages, injunction, specific performance, or other immediately coercive decree" (quoting S. Rep. No. 73-1005, at 2–3, 6 (1934))).[23]

Injunctions carry the possibility of subsequent contempt proceedings, while declaratory judgments do not. *Steffel v. Thompson*, 415 U.S. 452, 469–71 (1974) (explaining that declaratory relief "is a much milder form of relief than an injunction" and "is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt" (quoting *Ledesma*, 401 U.S. at 125–26 (Brennan, J., concurring in part and dissenting in part))). On the other hand, the mere possibility of contempt proceedings does not provide a definitive signal that a court order constitutes an injunction. *See Cohen v. Bd. of Trustees of the Univ. of Med. & Dentistry of N.J.*, 867 F.2d 1455, 1464 (3d Cir. 1989) ("Not every order

---

[22] "Declaratory relief is distinct from injunctive relief." *DiNello v. U.S. Dep't of Educ.*, 2006 WL 3783010, at *4 (N.D. Ill. Dec. 21, 2006) (citing *Am. Ass'n of Cosmetology Schs. v. Riley* (*AACS*), 170 F.3d 1250, 1254 (9th Cir. 1999)); *see also Zwickler v. Koota*, 389 U.S. 241, 254 (1967) ("[A] federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction."); *Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985) ("There is a considerable difference between *ordering* a government official to conduct his activities in a certain manner, and simply *pronouncing* that his conduct is unlawful and *should* be corrected.").

[23] *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 816 (2d Cir. 1975) ("Unlike damages and injunctive relief, which apply significant sanctions and thereby deter future conduct, a declaratory judgment has no practical effect except as it lays the basis for future relief of a more coercive nature."); *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994) (holding that the district court erred as a matter of law in classifying suit as a "declaratory judgment action" where plaintiff also requested coercive remedies for the breach of contract in the form of damages and injunctive relief); *Ilodianya v. Cap. One Bank USA NA*, 853 F. Supp. 2d 772, 775 (E.D. Ark. 2012) ("A declaratory judgment is a 'binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement.' An injunction, on the other hand, 'orders an affirmative act or mandates a specified course of conduct.'" (quoting *Judgment* and *Injunction*, Black's Law Dictionary (9th ed. 2009))).

which may be enforced against a party by civil contempt is such an injunction."). "If merely ordering action or inaction were sufficient to constitute an 'injunction' . . . , every discovery order, for instance, would qualify for immediate interlocutory appeal under the statute." *United States v. Santtini*, 963 F.2d 585, 591 (3d Cir. 1992) (citing *Hinton v. Dep't of Just.*, 844 F.2d 126, 130 (3d Cir. 1988)). And while some courts have concluded that a "declaratory judgment is inappropriate where the moving party seeks to adjudicate past conduct," *SEC v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 388 (S.D.N.Y. 2010), injunctions themselves are frequently future-oriented.[24]

Accordingly, "[s]ubstantial uncertainty exists as to 'the scope of the mandatory orders that qualify as "injunctions," [but] . . . it can be assumed that injunctions are orders that grant or protect at least part of the *permanent* relief sought as an *ultimate* result of the action.'" *Santtini*, 963 F.2d at 591 (second and third alterations in original) (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3921 (1977)). And just as there is a lack of clarity regarding the line between declaratory and injunctive relief, "[t]here is a dearth of authority with respect to the showing required for declaratory relief, but it appears to be less stringent than that required for injunctive relief." *Sierra Nev. Corp.*, 107 Fed. Cl. at 761 (citing *Ulstein*, 833 F.2d at 1055). In deciding whether to issue declaratory relief, courts ordinarily consider whether: (1) it "will serve a useful purpose in clarifying and settling the legal relations in issue"; or (2) "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Coastal Sav. Bank,* 977 F.2d 734, 737 (2d Cir. 1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

While declaratory relief is "perhaps milder than an injunction in some respects" — and while "formally different requirements and standards govern[] each remedy" — the "practical effect" of both remedies may be similar. *Skyworks*, 542 F. Supp. 3d at 725–26. That likely explains why "[c]ourts have on occasion refused to grant declaratory relief in cases where the effect would be identical to a legally impermissible injunction." *Ulstein*, 833 F.2d at 1055 (first citing *Great Lakes Co. v. Huffman*, 319 U.S. 293 (1943); and then citing *Samuels v. Mackell*, 401 U.S. 66 (1971)). In *PGBA*, for instance, our appellate court held that where the plaintiff-appellant had characterized its request for equitable relief as one for declaratory relief instead of an injunction, this Court properly looked to the substance of the request. 389 F.3d at 1228. In that case, brought pursuant to 28 U.S.C. § 1491(b), plaintiff-appellant "claim[ed] that it [wa]s entitled to further relief in the form of an order setting aside the [contract] award and thereby stopping performance by [the government] and [the awardee] under [the contract]." *Id.* The Federal Circuit held that

---

[24] Some courts have delineated a taxonomy of injunctions that, at least implicitly, does not neatly distinguish between remediating past and future harms. *See, e.g.*, *Lampkin v. District of Columbia*, 886 F. Supp. 56, 62 (D.D.C. 1995) (injunctions may be "generally characterized as preventive, structural or reparative").

such a request, although couched as a request for declaratory relief, "is tantamount to a request for injunctive relief." *Id.*; *see also Samuels*, 401 U.S. at 72, 73 (explaining that when "the practical effect of the two forms of relief will be virtually identical," the "propriety of declaratory and injunctive relief should be judged by essentially the same standards").[25]

The Federal Circuit in *PGBA* further explained the conceptual difference between declaratory and injunctive relief as follows:

> "The [United States Supreme Court] has recognized that different considerations enter into a federal court's decision as to declaratory relief, on the one hand, and injunctive relief, on the other." *Steffel*[, 415 U.S. at 469] (citations omitted). For example, "irreparable injury must be shown in a suit for an injunction, but not in an action for declaratory relief." [*Ledesma*, 401 U.S. at 123]; *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937). A declaratory judgment is also *generally less coercive* because it "is merely a declaration of legal status or rights," whereas an injunction either mandates or prohibits particular conduct. *Ledesma*, 401 U.S. at 124.

*PGBA*, 389 F.3d at 1228 n.6 (first alteration in original) (emphasis added). Thus, the Federal Circuit held that "[t]he Court of Federal Claims properly viewed [plaintiff-appellant]'s suit as an action for injunctive relief" and "did not err in looking to the traditional equitable factors in determining whether to set aside award of the contract." *Id.* at 1228.[26]

---

[25] *Cf. AACS*, 170 F.3d at 1254 ("[I]t seems obvious that the anti-injunction bar cannot be skirted by the simple expedient of labeling an action that really seeks injunctive relief as an action for 'declaratory relief.'").

[26] The Court concurs with Judge Wolski in *Supreme Foodservice GmbH v. United States*, however, that declaratory relief may be appropriate — and the injunctive relief factors avoided — where declaring an agency decision unlawful would not necessitate a coercive order to return the procurement to the *status quo ante*. 109 Fed. Cl. 369, 396–97 (2013) (contrasting an order setting aside a contract award with a "declaratory judgment that [a CICA stay] override decision is invalid" because a "declaration that an override was invalid suffices to restore the [default, statutory] stay of contract performance," opining that "allow[ing] an arbitrary override to insert the injunctive relief requirements into the process would convert the CICA stay to something other than what Congress created," and distinguishing *PGBA* at length); *see also Alli v. Decker*, 650 F.3d 1007, 1014–15 (3d Cir. 2011) (rejecting "the government's wholesale attempt to equate declaratory and injunctive relief").

The bottom line is that the Federal Circuit requires this Court — in deciding whether a particular order constitutes declaratory or injunctive relief — to focus on "the coercive effect" of the order.  *PGBA*, 389 F.3d at 1228 (quoting *Md. Citizens for a Representative Gen. Assembly v. Governor of Md.*, 429 F.2d 606, 611 (4th Cir. 1970)); *see also Md. Citizens*, 429 F.2d at 611 ("A declaratory judgment is not available as an academic exercise, and the coercive effect of one here would encounter all of the objections to injunctive relief.").  Although declaratory relief does not require a finding of irreparable harm, it is a form of equitable relief and "should be granted only as a matter of judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Vill.*, 333 U.S. 426, 431 (1948).  In other words, "[i]t is always the duty of a court of equity to strike a proper balance between the needs of the plaintiff and the consequences of giving the desired [equitable] relief," and that is particularly true "where governmental action is involved."  *Id.* ("[C]ourts should not intervene unless the need for equitable relief is clear, not remote or speculative.").  While an order or judgment nominally described as a declaratory judgment may or may not qualify as an injunction, every injunction implicitly contains declaratory relief.  *See Okpalobi v. Foster*, 244 F.3d 405, 431 (5th Cir. 2001) (Higginbotham, J., concurring) ("'[D]eclaratory relief' is . . . a conclusion implicit in the grant of injunctive relief.").[27]

### C.  The Court's Authority to Remand a Case to a Government Agency

This Court's power to remand matters to a federal agency further complicates the equitable remedies landscape.  Before delving into the appropriate use of remands — and the distinction between them and other forms of equitable relief (*i.e.*, injunctive or declaratory relief) — it is worth reiterating that the plain language of the Tucker Act, as amended by the Remand Statute, provides our Court with broad power to send matters back to an agency for further decision-making: "In *any* case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official *with such direction as it may deem proper and just*."  28 U.S.C. § 1491(a)(2) (emphasis added).[28]

#### 1.  Remand Mechanics

A remand "is the proper remedy where the court doubts that the agency has properly exercised its discretion but recognizes that it is the agency which should exercise

---

[27] *Cf. Cohen v. United States*, 650 F.3d 717, 740 n.5 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("[I]njunctive relief typically entails a declaration *plus* an order to do or refrain from doing something . . . .").

[28] *See also Keltner v. United States*, 148 Fed. Cl. 552, 558 (2020) ("In 1972, Congress first conferred the remand power on the Court of Claims — the Federal Circuit's (and this Court's) predecessor — via '[t]he remand statute, Pub. L. [No.] 92-415, 86 Stat. 652, now codified as part of 28 U.S.C. [§] 1491.'" (first and third alterations in original) (quoting *Testan*, 424 U.S. at 404)).

that discretion and not the court."  3 Charles H. Koch & Richard Murphy, *Administrative Law and Practice* § 8:31 (3d ed. 2010 & Supp. 2022).[29]

The United States Court of International Trade ("CIT") ─ our sister National Court ─ has explained the remand remedy as follows:

> That a remand determination replaces the original determination is a notion so basic to administrative law that few courts have found the need to articulate it expressly.  If the remand determination did not legally replace the original determination (which the court has, by definition deemed unlawful or inadequate), orders of remand would be pointless; the court would have no reason (and likely no jurisdiction) to review remand determinations. . . . Even without *vacatur,* the entire purpose of a remand is to allow the lower tribunal *to rectify or replace* a decision that a court has found to be deficient.

*Diamond Sawblades Mfrs. Coal.*, 33 C.I.T. at 1446 (emphasis added).

But the CIT's explanation of the remand process is an oversimplification, at least given the United States Supreme Court's recent decision in *Department of Homeland Security v. Regents of the University of California*, 591 U.S. --, 140 S. Ct. 1891 (2020).  *Regents* involved an attempt by the Department of Homeland Security ("DHS") to rescind a 2012 "immigration program known as Deferred Action for Childhood Arrivals, or DACA."  *Id.* at 1901 (explaining that the "[DACA] program allows certain unauthorized aliens who entered the United States as children to apply for a two-year forbearance of removal" and made them "eligible for work authorization and various federal benefits").  The initial decision to rescind DACA was contained in a 2017 memorandum issued by then-Acting

---

[29] This Court has generally explained the concept of a "remand" as follows:

> [T]he verb "remand" has long been understood as meaning to *return* or *send back* a case to another government body.  *See Ballentine's Law Dictionary* 1088 (3d ed. 1969) ("The return of a case to an administrative agency after a review by the court of a determination or decision of such agency."); *Black's Law Dictionary* 1457 (4th ed. 1968) ("To send back."); *Webster's Third New International Dictionary* 1919 (1971) (defined as "to return (a case) . . . from a court to an administrative agency"); *The American Heritage Dictionary of the English Language* 1100 (1969) ("To send or order back.").

*Pellegrini v. United States*, 103 Fed. Cl. 47, 54–55 (2012) (second alteration in original).

Secretary of Homeland Security Elaine C. Duke (the "Duke Memorandum"). *Id.* at 1903. Various groups filed suit challenging the lawfulness of the rescission, citing the APA and other grounds. *Id.* In one such action, the district court permitted DHS to "reissue a [new] memorandum rescinding DACA, this time providing a fuller explanation for the determination that the program lacks statutory and constitutional authority." *Id.* at 1904. (quoting *Nat'l Ass'n for the Advancement of Colored People v. Trump*, 298 F. Supp. 3d 209, 245 (D.D.C. 2018)). Several months later, Duke's successor, Secretary Kirstjen M. Nielsen, responded with yet another decisional memorandum (the "Nielsen Memorandum"), but the district court rejected that second explanation as well. *Id.* at 1904–05 (citing *Nat'l Ass'n for the Advancement of Colored People v. Trump*, 315 F. Supp. 3d 457, 460, 473–74 (D.D.C. 2018)).

The various DACA cases eventually made their way to the Supreme Court. *Regents,* 140 S. Ct. at 1905. The Supreme Court explained that "[t]he dispute before the Court is not whether DHS may rescind DACA," as "[a]ll parties agree that it may"; rather, "[t]he dispute is . . . primarily about the procedure the agency followed in doing so."[30] *Id.* In concluding that DHS's recission of DACA violated the APA, the Supreme Court held that the district court's remand "presented DHS with a choice: rest on the Duke Memorandum while elaborating on its prior reasoning, or issue a new rescission bolstered by new reasons absent from the Duke Memorandum." *Id.* at 1908. The Supreme Court found that "Secretary Nielsen took the first path[,] [r]ather than mak[e] a new decision," and that the "Nielsen Memorandum was by its own terms not a new rule implementing a new policy." *Id.* Specifically, "[b]ecause Secretary Nielsen chose to elaborate on the reasons for the initial rescission rather than take new administrative action, she was limited to the agency's original reasons, and her explanation 'must be viewed critically' to ensure that the rescission is not upheld on the basis of impermissible '*post hoc* rationalization.'" *Id.* (quoting *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)). The problem for DHS was that "despite purporting to explain the Duke Memorandum, Secretary Nielsen's reasoning [bore] little relationship to that of her predecessor." *Id.* According to the Court, while "Acting Secretary Duke rested the rescission on the conclusion that DACA is unlawful[,] [p]eriod," the Nielsen Memorandum offered three new independent reasons to support the rescission of DACA, "only the first of which [was] the conclusion that DACA is illegal" like the Duke Memorandum. *Id.*

---

[30] Similarly, in this case, this Court agrees with the government that the Army retains discretion pursuant to DFARS 215.306 to decline to set a competitive range and engage in discussions but, as explained in its earlier decision, that discretion is circumscribed by the regulation's use of the word "should" instead of "may." *IAP Worldwide Servs.*, 2022 WL 1021781, at *33 (explaining the difference between "should" and "may"). The Court's view, in that regard, is consistent with the government's own position in *Dell Federal Systems, L.P. v. United States*, 906 F.3d 982 (Fed. Cir. 2018). *See IAP Worldwide Servs.*, 2022 WL 1021781, at *34–35 (discussing *Dell Federal*).

The Supreme Court thus concluded that the Nielsen Memorandum mainly constituted an "impermissible *post hoc* rationalization[] . . . not properly before us." *Regents,* 140 S. Ct. at 1909.  While Justice Kavanaugh dissented in part — asserting, in the majority's words, "that requiring a new decision before considering Nielsen's new justifications would be 'an idle and useless formality,'" *id.* (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion))[31] — the majority in *Regents* responded that its view of the "[p]rocedural requirement[] . . . serves important values of administrative law":

> Requiring a new decision before considering new reasons promotes "agency accountability," *Bowen v. American Hospital Assn.*, 476 U.S. 610, 643 (1986), by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority. Considering only contemporaneous explanations for agency action also instills confidence that the reasons given are not simply "convenient litigating position[s]." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (internal quotation marks omitted). Permitting agencies to invoke belated justifications, on the other hand, can upset "the orderly functioning of the process of review," *SEC v. Chenery Corp.* [(*Chenery I*)], 318 U.S. 80, 94 (1943), forcing both litigants and courts to chase a moving target.  Each of these values would be markedly undermined were we to allow DHS to rely on reasons offered nine months after Duke announced the rescission and after three different courts had identified flaws in the original explanation.

*Regents*, 140 S. Ct. at 1909 (first alteration in original).

*Regents* thus explains the general purpose and functionality of a remand, as follows:

> It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action."  *Michigan*[ *v. EPA*, 576 U.S. 743, 758 (2015)].  If those grounds are inadequate, a court may remand for the agency to do one of two things:  First, the agency can offer "a fuller explanation of

---

[31] *Regents*, 140 S. Ct. at 1935 (Kavanaugh, J., concurring in the judgment in part and dissenting in part) ("The Court's decision seems to allow [DHS] on remand to relabel and reiterate the substance of the Nielsen Memorandum, perhaps with some elaboration as suggested in the Court's opinion.").

19

the agency's reasoning *at the time of the agency action*." *Pension Benefit Guaranty Corporation v. LTV Corp.*, 496 U.S. 633, 654 (1990) (emphasis added). See also *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 5–6 (CADC 2006) (Garland, J.) (permitting an agency to provide an "amplified articulation" of a prior "conclusory" observation (internal quotation marks omitted)). *This route has important limitations. When an agency's initial explanation "indicate[s] the determinative reason for the final action taken," the agency may elaborate later on that reason (or reasons) but may not provide new ones. Camp v. Pitts*, 411 U.S. 138, 143 (1973) (*per curiam*). Alternatively, the agency can "deal with the problem afresh" by taking *new* agency action. *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947) (*Chenery II*). An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.

*Regents*, 140 S. Ct. at 1907–08 (second alteration in original) (second emphasis added).

At least one subsequent district court decision summarized its understanding of the *Regents* rule against *post hoc* rationalizations, as follows:

In general, "[c]ourts do not . . . give credence to post hoc rationalizations for agency action, but instead consider only the regulatory rationale offered by the agency at the time of such action." *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 241 n.23 (D.D.C. 2011) (cleaned up). But this "'post hoc rationalization' rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning." *Loc. 814, Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976). Its aim is to prevent courts from upholding agency action based on "rationales offered by anyone other than the proper decisionmakers," *id.*, or rationales "developed in litigation to justify the decision," *Nat'l Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D.D.C. 1996), *aff'd in part and remanded sub nom. Troy Corp. v. Browner*, 120 F.3d 277 (D.C. Cir. 1997). Thus, it "applies to rationalizations offered for the first time in litigation affidavits," "arguments of counsel," *Loc. 814*, 546 F.2d at 992 (internal citation omitted), and any bases for

agency action that differ from the ones provided originally,
[*Regents*, 140 S. Ct. at 1908].

*End Citizens United PAC v. Fed. Election Comm'n*, 2022 WL 1136062, at *2 (D.D.C. Apr. 18, 2022) (first alteration in original).  In that case, the district court considered a "Statement of Reasons . . . written by the [FEC] Commissioners" — even though it was created after the lawsuit was filed — because the Statement had been issued by "the very decisionmakers responsible for the agency action."  *Id.*  The district court thus concluded that the Statement was "a far cry from an argument of counsel or an affidavit submitted in connection with litigation."  *Id.*

The problem with such an approach — focusing on the *author(s)* of the *post hoc* rationalization — is that the Supreme Court in *Regents* all but expressly rejected it:

> While it is true that the Court has often rejected justifications belatedly advanced by advocates, we refer to this as a prohibition on *post hoc* rationalizations, not advocate rationalizations, ***because the problem is the timing, not the speaker***.  The functional reasons for requiring contemporaneous explanations apply with equal force regardless whether *post hoc* justifications are raised in court by those appearing on behalf of the agency ***or by agency officials themselves***.

*Regents*, 140 S. Ct. at 1909 (emphasis added).[32]  Accordingly, the Court held that "[t]he basic rule here is clear: [a]n agency must defend its actions based on the reasons it gave when it acted" if it declined to issue a new decision.  *Id.* at 1909–10 (precluding DHS from "cutting corners to allow [it] to rely upon reasons absent from its original decision").[33]

---

[32] The Supreme Court in *Regents* thus implicitly rejected the following, oft-quoted excerpt from the D.C. Circuit regarding the *post hoc* rationalization rule: "[It] is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning."  *Alpharma*, 460 F.3d at 6 (quoting *Loc. 814*, 546 F.2d at 992); *see also United Food & Com. Workers Union, Loc. No. 663 v. U.S. Dep't of Agric.*, 532 F. Supp. 3d 741, 779 (D. Minn. 2021) (expressly recognizing that the "Supreme Court rejected" *Alpharma*'s approach and, instead, "prohibited consideration of any rationale that goes beyond the initial reasons offered by the agency").  *But see, e.g., Harmonia Holdings Grp., LLC v. United States*, 2022 WL 402399, at *3 (Fed. Cl. Jan. 25, 2022) ("Even though the memorandum was drafted after the cancellation decision (and after this protest was filed), the Court agrees that the Acting Director's memorandum is not improper post-hoc rationalization.").

[33] *See also In re Vestavia Hills, Ltd.*, 2021 WL 1165038, at *14 (S.D. Cal. Mar. 26, 2021) ("Courts may not consider post hoc rationalizations for agency action, whether articulated after-the-fact in court proceedings or in belated agency explanations.  However, an agency may 'provide an "amplified

Following *Regents*, a trial court generally may "remand [to the agency] with a choice: either rest on its [first] decision while elaborating on its prior reasoning, or issue a new decision featuring additional reasons absent from its [earlier] decision." *Fisher v. Pension Benefit Guar. Corp.*, 994 F.3d 664, 669–70 (D.C. Cir. 2021). But this general rule raises yet another question: may a trial court remand a matter to an agency, but limit the agency to only one of those two options (and thereby preclude the agency from issuing a new decision)? At least some courts read *Regents* as preserving a lower court's equitable powers to limit an agency's options on remand. *See, e.g.*, *Clarke Health Care Prods., Inc. v. United States*, 152 Fed. Cl. 570, 573–75 (2021) (opining that while *Regents* "permit[s]" courts "to remand a matter for a new decision, it does not require courts to do so" and explaining that "an agency [is] not guaranteed a remand to make a new decision," particularly not where it would "effect an end-run around the bar against *post hoc* rationalizations"). Indeed, one district court expressly observed that even *Regents* is far from a model of clarity: "there is some caselaw (including from *Regents* itself) indicating an agency is not automatically entitled to provide a fuller explanation, but that it could do so *if requested by the Court*." *Idaho State Snowmobile Ass'n v. U.S. Forest Serv.*, 2021 WL 4188052, at *4 (D. Idaho Sept. 14, 2021) (noting that in *Regents*, "the district court had explicitly 'stayed its order for 90 days to permit DHS to reissue a memorandum rescinding DACA, this time with a fuller explanation of the conclusion that DACA was unlawful'" (quoting *Regents*, 140 S. Ct. at 1904)).[34]

Although this Court agrees that "it appears that most cases . . . interpret the Supreme Court's decision in *Regents* broadly" — *i.e.*, "that agencies get to decide which route to take upon remand" — it also "appear[s] that the Court [may] indicate which option (if any) it deems appropriate under the circumstances." *Idaho State Snowmobile Ass'n*, 2021 WL 4188052, at *4–5 & n.8 (concurring with *Clarke Health Care*, 152 Fed. Cl. at

---

articulation' of a prior "conclusory" observation' as long as its explanation is limited to the original reasons offered." (quoting *Regents*, 140 S. Ct. at 1909)).

[34] In other words, "it appears there are two schools of thought regarding the 'fuller explanation' option in agency review cases upon remand" following *Regents*:

> The first interpretation requires an active invitation from the Court to supplement the record and provide the "fuller evidence" mentioned in *Regents* and its progeny. The word "may" in the phrase "the Court *may* remand" for one of the two procedures supports this discretionary proposition.

> The second approach appears to leave to the *agency* the decision of which method to pursue on remand. This reading is best supported by the straightforward approach most courts have taken following *Regents* and the lack of specific details on remand.

*Idaho State Snowmobile Ass'n*, 2021 WL 4188052, at *4 (footnote omitted).

574).[35]  As discussed in more detail *infra*, this Court need not take a position on this debate.  Suffice it to say, at least on the facts at issue in this case, the Army remains free to select either path on remand.  That makes sense where, as here, even a full-blown injunction — precluding the agency from proceeding with the contract award to Vectrus and requiring a new source selection decision (*i.e.*, to correctly apply DFARS 215.306) — would necessitate, by definition, a new agency decision.[36]

Because we still must distinguish between a remand order and other forms of equitable relief to explain this Court's resolution of this matter, this Court next turns to that subject.

### 2.   Remands Distinguished from Other Equitable Relief

There are at least three flavors of remand.  A remand may be ordered with or without:  (1) a court's vacating the challenged agency decision, as explained *supra*;[37] (2) specific instructions; or (3) additional coercive injunctive relief.

For example, even courts that hold that "*vacatur* of an unlawful agency action *normally* accompanies a remand" also hold that courts retain substantial discretion to fashion a remedy: "[w]hen equity demands, . . . the [agency action] can be left in place while the agency reconsiders or replaces the action, or to give the agency time to follow the necessary procedures."  *All. for the Wild Rockies*, 907 F.3d at 1121 (emphasis added). In other words, as explained *supra*, "[a] federal court 'is not required to set aside every

---

[35] One scenario which may justify *not* permitting an agency flexibility on remand is where the agency's "explanation [is not] lacking or inadequate" but instead is simply "incompatible with the facts in the administrative record."  *Idaho State Snowmobile Ass'n*, 2021 WL 4188052, at *6.  In such a case, there is "not . . . a failure on the [agency]'s part in explaining its actions as to frustrate effective judicial review or that would require a 'fuller explanation'" because "[t]here are contemporaneous explanations of the agency decision."  *Id.*

[36] This Court recognizes that there is some inherent tension between, on the one hand, the Supreme Court's concern with an agency's *post hoc* rationalizations and, on the other hand, permitting an agency to issue a brand new agency decision, particularly where the first one is not vacated.  *See* Eidelson, *supra* note 13, at 1802 (explaining that "even a 'new' action that comes after a remand without vacatur is always at risk of being post hoc in the relevant and problematic sense" and that "remanding without vacatur will mean that even a new, superseding decision has no real-world impact of the kind that *Regents* evidently considered important to political accountability").  But squaring that circle will have to wait for another day.

[37] "[T]he terms 'invalid' and 'vacated' are not synonyms[, which] is why we may label an agency's action 'invalid' even when we have remanded it for further proceedings without having vacated it."  *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009) (citing *In re Core Commc'ns, Inc.*, 531 F.3d 849, 856 (D.C. Cir. 2008)).  In this case, even if the Army's contract award decision may be declared invalid, the Court has declined to vacate it.

unlawful agency action,' and the 'decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity.'" *Id.* (quoting *Espy*, 45 F.3d at 1343).  That is particularly true in actions pursuant to 28 U.S.C. § 1491(b), which does not import the APA's "shall . . . set aside" language.  *See PGBA*, 389 F.3d at 1225–26.[38]

What that suggests, of course — in line with *PGBA*, 389 F.3d at 1228 — is that a remand order that *does* vacate an agency's contract award decision is tantamount to injunctive relief and certainly requires, at a minimum, a balancing of the relative equities and a finding of irreparable harm sufficient to justify the injunction.  Other circuit courts appear to concur in that view.  *See, e.g.*, *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1239 (10th Cir. 2017) ("Vacatur of agency action is a common, and often appropriate form of injunctive relief granted by district courts.").[39]

---

[38] Even the D.C. Circuit describes vacatur without remand as an "equitable remedy," requiring that the trial court balance "(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand[,] and (2) the disruptive consequences of vacatur." *United Steel*, 925 F.3d at 1287 (quoting *Heartland*, 566 F.3d at 197); *see also Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) ("The decision whether to vacate [an unlawful agency action] depends on [1] 'the seriousness of the [agency] order's deficiencies . . . and [2] the disruptive consequences of an interim change that may itself be changed.'" (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990))).  Indeed, "every court of appeals to consider the issue has recognized the power of reviewing courts to remand an agency action without vacatur." *Ackerman Bros. Farms, LLC v. U.S. Dep't of Agric.*, 2021 WL 6133910, at *5 (E.D. Mich. Dec. 29, 2021) (citing, amongst other decisions, *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1380 (Fed. Cir. 2001)); *see also Diné Citizens Against Ruining Our Env't v. Bernhardt*, 923 F.3d 831, 859 (10th Cir. 2019) (describing different remand approaches).

[39] But, even then, courts are imprecise.  In *Diné Citizens*, for example, the United States Court of Appeals for the Tenth Circuit — in the very same section equating vacatur and injunctive relief — also distinguished the two forms of relief, noting that "[b]ecause vacatur is 'sufficient to redress [the] injury, no recourse to *the additional and extraordinary relief of an injunction* [is] warranted.'" 923 F.3d at 859 (third alteration in original) (emphasis added) (quoting *Monsanto*, 561 U.S. at 166). Even courts within the Tenth Circuit appear flummoxed by its jurisprudence on the subject:

> [While] [t]he Tenth Circuit's assertion that vacatur is a form of injunctive relief implies that the traditional standard for injunctive relief applies to vacatur under the APA[,] . . . [t]he Tenth Circuit has not, however, performed the traditional four-factor inquiry when vacating agency action — or ordering a district court to vacate agency action on remand — under the APA, which suggests that the Tenth Circuit does not treat vacatur fully as injunctive relief.

*N. N.M. Stockman's Ass'n v. U.S. Fish & Wildlife Serv.*, 494 F. Supp. 3d 850, 1029–30 (D.N.M. 2020) (holding that "vacatur under the APA is a form of discretionary relief, akin to an injunction, even though vacatur is not, strictly speaking, a form of injunctive relief" but concluding that "vacatur

On the other hand, orders "for further administrative proceedings" — *i.e.*, mere "generic remand" orders — may be contrasted with orders either for "equitable relief or remand with specific instructions." *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 770 (9th Cir. 2007) (holding that a remand with coercive instructions should be issued in "rare circumstances" but that the "government's intransigence in following Congress's mandate" would make a "generic remand . . . not appropriate" (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))); *see also Miccosukee Tribe of Indians of Fla. v. United States*, 2008 WL 2967654, at *41 (S.D. Fla. July 29, 2008) ("The Supreme Court has suggested that in rare circumstances, it is appropriate in cases brought under the APA for courts to go beyond simply remanding a matter back to the agency. . . . Circuit courts have upheld district court decisions to remand with specific instructions to the agencies in cases brought under the APA." (first citing *Fla. Power & Light*, 470 U.S. at 744; and then citing *Earth Island Inst.*, 494 F.3d at 770)).[40]

### 3. This Court's Remand Power in § 1491(b) Cases

The Remand Statute was enacted long before ADRA.  Thus, while a plausible hypothesis may be that this Court's remand power exists only to support a successful money claim in a § 1491(a) action (and is unavailable in a § 1491(b) action),[41] the Court, cannot disregard the plain language of the Remand Act's reference to "*any* case within [the Court's] jurisdiction."  28 U.S.C. § 1491(a)(2) (emphasis added).  Congress is presumed to have been aware of the Remand Statute when Congress subsequently enacted ADRA and did not see fit either to limit the Remand Statute's reach or to otherwise alter its language.  *See Laerdal Med. Corp. v. Int'l Trade Comm'n*, 910 F.3d 1207, 1214 (Fed. Cir. 2018) (presuming that Congress was aware of the Federal Rules of Civil

---

is a form of 'equitable relief,'" requiring "a 'balanc[ing] [of] the equities'" (second alteration in original) (quoting *Black Warrior Riverkeeper*, 781 F.3d at 1290)), *aff'd*, 30 F.4th 1210 (10th Cir. 2022); *see also N.M. Health Connections v. U.S. Dep't of Health & Hum. Servs.*, 340 F. Supp. 3d 1112, 1175 (D.N.M. 2018) ("[T]he APA's text indicates that vacatur is the mandatory remedy for arbitrary and capricious agency action, which is at odds with the Tenth Circuit's statement that vacatur is a form of injunctive relief.").

[40] Once again, there are few, if any, clean lines.  Within the United States Court of Appeals for the Second Circuit, for example, a remand "with instructions" does not clearly constitute injunctive relief.  *See, e.g.*, *Merritt Parkway Conservancy v. Mineta*, 424 F. Supp. 2d 396, 424–25 (D. Conn. 2006) (specifying remand instructions and separately discussing injunctive relief considerations).  The remand instructions in *Merritt Parkway* may well constitute a "generic remand" insofar as the district court merely instructed the agency "to address the issues raised by [the] [p]laintiffs and to conduct further proceedings consistent with [applicable law]" and to "consider [the] [p]laintiffs' related [statutory] claims."  *Id.* at 424.

[41] *See Ardell v. United States*, 578 F.2d 1388 (Ct. Cl. 1978) ("But there can be no judgment to which equitable relief such as plaintiff seeks can append unless there is a present money claim against the United States.  Such a claim is the *sine qua non* of this court's jurisdiction.").

Procedure when it amended a statute); *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation.").[42]

The Federal Circuit's predecessor tribunal, the Court of Claims — the decisions of which remain binding on this Court[43] — has explained that "[t]he objective of the remand power is to provide a complete remedy" and that "[t]he deliberate Congressional purpose in enacting the remand statute was to make it unnecessary for the parties to go to another court, after the Court of Claims made its decision, to obtain the rights which follow from the decision." *Hoopa Valley Tribe v. United States*, 596 F.2d 435, 447 (Ct. Cl. 1979) (first citing S. Rep. No. 92-1066, at 2 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3116, 3117; and then citing H.R. Rep. No. 92-1023, at 3–4 (1972)). Thus, the very point of the Remand Statute is to provide this Court with similar powers to those of the district court, assuming, of course, that the plaintiff's claim is otherwise properly within this Court's jurisdiction. *See id.* ("[T]he remand power was available in this court and made it unnecessary for a party . . . to sue in a district court to challenge the [agency's] decision . . . ."); *see also Testan*, 424 U.S. at 404 ("The remand statute . . . applies only to cases already within the court's jurisdiction.").[44]

In any event, as noted *supra*, the Federal Circuit has all but endorsed the view that this Court may remand matters in awarding relief in § 1491(b) actions. *See DynCorp Int'l,* 10 F.4th at 1316; *Impresa*, 238 F.3d at 1338–39. Because § 1491(b) actions are "case[s] within [this Court's] jurisdiction," 28 U.S.C. § 1491(a)(2), the Remand Statute applies here. And, even if that interpretation of § 1491(a)(2) is incorrect, this Court holds that the relief expressly authorized in § 1491(b) is sufficiently broad to encompass remand orders. *See* 28 U.S.C. § 1491(b)(2) ("To afford relief in such an action, the courts may award *any relief that the court considers proper* . . . ." (emphasis added)); *see also Macaulay-Brown, Inc. v.*

---

[42] *See also McCarren v. Sec'y of Dep't of Health & Hum. Servs.*, 40 Fed. Cl. 142, 145 (1997) ("Congress is presumed to be aware of the language and judicial interpretation of pertinent existing law when it passes new legislation, or makes amendments to existing legislation." (first citing *Miles*, 498 U.S. at 32; and then citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97 (1979))); *In re Nw. Airlines Corp.*, 483 F.3d 160, 168–69 (2d Cir. 2007) (reasoning that, in assessing the implications of amendments to existing statutory schemes, courts may "assume that Congress passed each subsequent law with full knowledge of the existing legal landscape").

[43] *See Middleton v. Dep't of Def.*, 185 F.3d 1374, 1379 n.2 (Fed. Cir. 1999) ("The decisions of the Court of Claims are binding precedent for our court's panels." (citing *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc))).

[44] The Federal Circuit has expressly declined to decide "whether an injunction was [effectively] available pursuant to [this] Court's 'power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.'" *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 n.3 (Fed. Cir. 2011) (quoting 28 U.S.C. § 1491(a)(2)). As discussed below, the critical distinction between injunctive relief, declaratory relief, and a remand order is the degree of a court order's coercive effect upon a party.

*United States*, 125 Fed. Cl. 591, 607 (2016) (vacating agency's decision, remanding matter to agency pursuant to RCFC 52.2, and requiring the submission of "a status report at or before the conclusion of the remand period on the status of the remand proceedings"); *Emerald Coast Finest Produce Co. v. United States*, 75 Fed. Cl. 549, 556 (2007) (staying and remanding case to agency, pursuant to RCFC 52.2(a), to "cause to occur an evaluation . . . and a decision by the [Source Selection Authority]" on various offerors' proposals).

In another recent bid protest-type action involving the very same plaintiff as this case, Judge Meyers concluded that "a remand is particularly appropriate to allow the [agency] to perform the missing analysis, allow appropriate officials to review it, prepare new decision documents, and move this action to an efficient resolution." *IAP World Servs., Inc. v. United States*, 152 Fed. Cl. 384, 412 (2021).[45]  As explained further below, this Court agrees with Judge Meyers and follows his lead in this case.

\* \* \* \*

Surveying the remedies landscape as a whole, this Court concludes that there is a continuum of equitable relief: the more coercive the order, the more likely it is to qualify as an injunction — thereby requiring a finding of irreparable harm — while a noncoercive order interpreting applicable law (or legal instruments) is properly categorized as declaratory relief.  In a similar vein, a generic remand for an agency to comply with the law (as interpreted by a court) in the first instance is not an injunction, whereas a remand with vacatur (*e.g.*, an order setting aside a contract award or otherwise prohibiting contract performance) — or one that is accompanied by detailed, coercive instructions — may constitute an injunction.[46]  Irrespective of the precise type of equitable relief, this Court must consider the relative equities and balance attendant harms, even where a plaintiff need not demonstrate irreparable harm (*e.g.*, for declaratory relief or a remand order).

---

[45] *See also Insight Pub. Sector, Inc. v. United States*, 157 Fed. Cl. 416, 432 (2021) (Roumel, J.) (applying RCFC 52.2 in bid protest action pursuant to 28 U.S.C. § 1491(b) and concluding that this "Court may remand without vacatur in scenarios, as here, where '[i]t may be that the agency can provide a reasonable explanation for its decision[,] . . . [b]ut it has not yet done so'" (alterations in original) (quoting *Nat'l Org. of Veterans Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1380 (Fed. Cir. 2001))); *Syncon, LLC v. United States*, 154 Fed. Cl. 442, 452 (2021) (Bruggink, J.) ("While we agree that this court may not engage in a de novo review of a bid protest action, consideration of supplemental materials gained during a remand is not improper and does not transform the arbitrary and capricious standard to a de novo review." (discussing 28 U.S.C. § 1491(a)(2))).

[46] *See New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 676 (S.D.N.Y.) (concluding that "an injunction is necessary to make the Court's vacatur effective" and that such relief "combined with the preclusive effect (at least as between these parties) of the Court's factual findings and legal conclusions, is as good and as 'effective'" as "declaratory" relief), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Com. v. New York*, 588 U.S. --, 139 S. Ct. 2551 (2019).

## II.     The Court Denies IAP's Request for an Injunction and, Instead, Remands This Matter to the Army

IAP previously requested "injunctive relief appropriate to require the Army to reopen the procurement, including conducting discussions, and making a new award decision." *IAP Worldwide Servs.*, 2022 WL 1021781, at *50 (quoting ECF No. 41 at 30).  IAP, in its supplemental brief, "renews its request for tailored injunctive relief," asking this Court only to "enforc[e] DFARS 215.306 by ordering the Army to apply it and act accordingly."  Pl. Supp. Br. at 1, 3.  IAP thus no longer seeks an order requiring the Army to conduct discussions or to make a new award decision — and, once again, IAP disclaims an order seeking to halt performance of the contract award at issue.  *Id.* at 4 ("Vectrus has been performing the . . . contract [at issue], and would continue to do so while the Army applies and acts in accord with DFARS 215.306.").  Moreover, IAP acknowledges that "the Army may develop some new rationale aiming to justify the current award or to exclude IAP from discussions."  *Id.* at 8.

Given that IAP has abandoned its request for an injunction requiring discussions and a new award decision, this Court holds that it need not decide the issue of irreparable harm prior to remanding this matter to the Army for further consideration consistent with the Court's prior decision in this case.  *See IAP Worldwide Servs.*, 2022 WL 1021781, at *51.  Such a generic remand — even if interpreted to include declaratory relief or accompanied by some limited instructions and bounded with deadlines[47] — does not transform the relief into an injunction.  *See, e.g., Nat. Res. Def. Council, Inc. v. U.S. Army Corps of Eng'rs*, 457 F. Supp. 2d 198, 237–38 (S.D.N.Y. 2006) (ordering the agency "to produce sufficient data to make a reasoned decision, within four months" and explaining that "[a] remand for reconsideration of the [agency action] *rather than an injunction* carefully balances judicial review of the procedures followed with the agency's independent decisionmaking power regarding the substantive issues before it" (emphasis added)); *All. for the Wild Rockies v. Zinke*, 265 F. Supp. 3d 1161, 1181 (D. Mont.

---

[47] *See Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014, 1018, 1029 (E.D. Cal. 2013) (holding that APA permits "declaratory relief without setting aside the agency action" and that "[g]iven the efficacy of declaratory relief, an injunction . . . is not necessary"); *Neto v. Thompson*, 506 F. Supp. 3d 239, 254 (D.N.J. 2020) (declaring agency action "unlawful, and remand[ing] to the [agency] for [the] 'application of the correct legal test'" (quoting *MCPC, Inc. v. NLRB*, 813 F.3d 475, 490 (3d Cir. 2016))); *Button Depot, Inc. v. U.S. Dep't of Homeland Sec.*, 386 F. Supp. 2d 1140, 1144, 1148–49 (C.D. Cal. 2005) (granting plaintiffs' request for a declaratory judgment that the challenged agency action was arbitrary, contrary to law, and an abuse of discretion and "remanding this matter to [the agency] for reconsideration"); *Pac. Rivers Council*, 942 F. Supp. 2d at 1034 (imposing deadline for "supplemental" agency action "that addresses the analytical deficiency identified by" the appellate court).

2017) ("[U]pon remand, a court should provide the agency with specific instructions to address its errors.").[48]

Moreover, the remand remedy is the preferred path in this situation. As the Supreme Court articulated in *Florida Power & Light Co. v. Lorion*, 470 U.S. at 744, "[i]f the record before the agency does not support the agency action[] [or] if the agency has not considered all relevant factors . . . the proper course, except in rare circumstances, is to remand to the agency *for additional investigation or explanation.*" *Id.* (emphasis added). This Court thus similarly concludes that remand "is most useful when an agency retains some discretion with regard to the action it took in violation of the APA." *Ramirez v. U.S. Immigr. & Customs Enf't*, -- F. Supp. 3d --, 2021 WL 4284530, at *5 (D.D.C. 2021) (citing *Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019)); *see also Huff v. Vilsack*, 195 F. Supp. 3d 343, 362 (D.D.C. 2016) (explaining that remand "is generally warranted because courts prefer that agencies apply their expertise to pertinent issues of fact and law in the first instance").

In this case, the decision regarding whether to establish a competitive range and to engage in discussions, pursuant to DFARS 215.306, lies with the Army in the first instance. This makes a remand a particularly appropriate remedy here. *Cf. I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("[A] court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). Indeed, even if the Tucker Act, as amended by ADRA, "provides authority for the [trial] court to order" an agency to do something, the Court "must consider whether there are 'questions which have not yet been considered by the administrative agency but are nevertheless within the agency's authority.'" *Lion Health Servs., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Presbyterian Hosp. of Dallas v. Harris*, 638 F.2d 1381, 1389 (5th Cir. 1981)). The fact that DFARS 215.306 employs the operative word "should" does *not* render that provision toothless, *see IAP Worldwide Services*, 2022 WL 1021781, at *38, but it *does* preserve some amount of agency discretion that this Court must respect, *see Dep't of Com. v. New York*, 588 U.S. --, 139 S. Ct. 2551, 2576 (2019) (remanding case "for further proceedings consistent with this opinion").[49] Having declared the Army's Source Selection Decision

---

[48] *Cf. Monsanto*, 561 U.S. at 165–66 (characterizing vacatur of agency decision as a "less drastic remedy" and contrasting it with "the additional and extraordinary relief of an injunction"); *Friends of Wild Swan v. U.S. Env't Protec. Agency*, 74 Fed. App'x 718, 722 (9th Cir. 2003) ("We have previously found remand with specific instructions to be an appropriate remedy for APA violations.").

[49] The key distinction between this case and the undersigned's decision in *Oak Grove Techs., LLC v. United States*, is that, in *Oak* Grove, the "allegations, if proven, would arguably require the [a]gency to resolicit the . . . contract or engage in discussions because there would be no remaining awardable offeror," and, indeed, the Court found that the challenged "proposals — and their evaluations — suffer[ed] from serious compliance defects under the RFP's terms." 155 Fed. Cl. 84, 97, 108 (2021); *see also id.* at 113–14 ("Discussions, of course, would have enabled [the plaintiff]

Document arbitrary and capricious for its failure to properly consider DFARS 215.306, *see IAP Worldwide Services*, 2022 WL 1021781, at *35–39, remanding this matter to the Army for further consideration is not tantamount to an injunction.

In contrast, were this Court to vacate the contract award decision or to instruct the Army to conduct discussions, such an order would be sufficiently coercive so as to constitute an injunction. *See Sierra Club*, 526 F.3d at 1358–59 ("The district court issued commands of such specificity and breadth that no litigant would dare violate them. If the [enjoined party] had violated the commands, the district court could have initiated contempt proceedings, and it is not clear to us that the court would accept 'But you said it wasn't an injunction' as a defense. 'In short, we adhere to the time-tested adage: if it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck.'" (quoting *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 (11th Cir. 1998))). But where this Court essentially orders the government merely to "obey the law" via a remand — *e.g.*, to follow DFARS 215.306, as the Court has explained it — such a directive may be viewed as including declaratory relief, but it is not an injunction. *Cf. S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) ("[U]nder Rule 65(d) [of the Federal Rules of Civil Procedure], an injunction must be more specific than a simple command that the defendant obey the law." (first alteration in original) (quoting *Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996))).

Again, this Court only remands this matter to the Army to ascertain whether its original determination regarding discussions was correct or to issue a new one, consistent with the approach the Supreme Court approved in *Regents*, 140 S. Ct. at 1907–08. On remand, whether the Army (1) affirms and amplifies its original decision, or (2) issues a new award decision without discussions, IAP "will be entitled to further judicial review of those agency determinations." *B & D Land & Livestock Co. v. Veneman*, 332 F. Supp. 2d 1200, 1216 (N.D. Iowa 2004); *see also* Intv. Supp. Br. at 5.

The Court thus agrees with the government that IAP's putative irreparable harm is "highly speculative" (particularly in terms of lost profits), Def. Supp. Br. at 4, and, to the extent it exists at all, does not justify highly coercive relief requiring the government to engage in discussions or vacating the awarded contract. The Court, however, also agrees with IAP that "relief can be narrowed to give the Army discretion to act lawfully, but the Army must still act lawfully." Pl. Supp. Br. at 9. In balancing the equities and harms, the Court concludes that IAP should not be denied all equitable relief such that "IAP will inevitably lose its right to have its proposal lawfully considered for this sizable contract." *Id.* Rather, just as Vectrus proposes, the Court can address the harm that IAP has suffered — *i.e.*, "the opportunity to be considered for the competitive range, assuming that the Army could not justify its refusal to engage in discussions" — without ordering

_____

(and presumably all of the offerors) to fully revise their respective proposals to address any deficiencies in a final proposal revision.").

injunctive relief.  Intv. Supp. Br. at 2–3 (quoting *IAP Worldwide Servs.*, 2022 WL 1021781, at *52); *see also id.* at 5–6 (proposing a remand and noting that "the [Army] has assured the Court that should a new award be required 'that any new contract award will be for the entire period of performance covered by [the] Solicitation'" (quoting ECF No. 11 at 1–2)).  A remand order is appropriate here because "at most, what IAP lost . . . was the opportunity to be considered for the competitive range."  *IAP Worldwide Servs.*, 2022 WL 1021781, at *52.

The government, however, not only opposes injunctive relief but also opposes any relief, including a remand, arguing that "if the Court were to order a remand, the harm to the Government would be substantial and would be both monetary and programmatic."  Def. Supp. Br. at 4.  If the Court were considering injunctive relief (*i.e.*, an order vacating the contract award decision or requiring the formation of a competitive range and discussions), the Court would agree with the government that IAP's harm at this stage is insufficient.  But the Court is only ordering a limited remand.  The fact that "conducting discussions would take a minimum of 9–12 months, and would require the [Army] to divert resources from other important missions . . . to conduct the discussions" is, thus, inapposite.  *Id.* at 6.  Again, the Court is not ordering such coercive and disruptive relief (at least not for now).  Whether considering such timing requirements and attendant costs requires a new source selection decision, consistent with *Regents*, this Court leaves for the Army to decide.

The government further resists "even a [limited] remand solely to justify the decision not to conduct discussions" because it "would take time, and during that time there would continue to be instability on the current contract, which may cause additional contractor turnover, and risk of additional litigation, which could cause further instability."  *Id.* at 4–5.  The government cites no facts from its supplemental harm declarations, ECF Nos. 56-1, 56-2, to support those assertions and the Court will not credit them in the absence of concrete evidence.[50]

At the end of the day, the government's opposition to a remand seems to boil down to its contention that "any remand would be futile."  Def. Supp. Br. at 5.  There are a few problems with the Court assuming such an outcome.  First, the government itself agrees that "IAP would have the opportunity to protest [any] decision on remand not to conduct discussions."  *Id.*  Second, the government's assertion that "the most likely

---

[50] The government submitted the additional harm declaration of Dr. Beth M. Rairigh, the Source Selection Authority for this procurement.  ECF No. 56-1.  She asserted that "[i]n the event the Court remands and the Army is ordered to consider DFARS 215.306(c) and further document its decision whether to conduct discussions with some or all of [the] offerors, the impact will be significant both financially and operationally . . . ."  *Id.* at 2.  All of the harms detailed therein, however, relate to more specific and coercive injunctive relief that would force the Army to engage in discussions or to cancel the contract award.

outcome of any remand order" is that the Army would reach the same determination not to engage in discussions, *id.* at 4, is not creditable under *Regents*. If the Court were to deny IAP any relief on that basis, the Court essentially would be permitting a *post hoc* justification for the Army's decision at issue to support some sort of harmless error finding. The Court cannot permit the Army to supplement the administrative record with analysis that it did not undertake at the time the Army moved forward in the procurement to make an award without properly considering DFARS 215.306. *See Regents*, 140 S. Ct. at 1909 (explaining that "impermissible *post hoc* rationalizations . . . are not properly before us" and holding that "[t]he basic rule here is clear: [a]n agency must defend its actions based on the reasons it gave when it acted").

Consistent with *Regents*, this Court will order the Army either (1) to provide "a fuller explanation of the agency's reasoning *at the time of the agency action*," or (2) to render a new agency decision. *Id.* at 1907–08 (quoting *Pension Benefit Guar. Corp.*, 496 U.S. at 654). But the fact that the Court will not issue an injunction (*e.g.*, vacating the contract award, staying performance, or otherwise requiring discussions) is not an excuse for the government to entirely skip the remand process.[51] To the extent the Army must now engage in yet further analyses, the Court is sympathetic to the government's concerns regarding the additional administrative burden, but the Court still must comply with the Supreme Court's binding instructions in *Regents*. *See id.* at 1909–10 (explaining "the rule" that an agency must issue "a new [agency] decision before [a court can] consider[] new reasons").[52] Moreover, the additional work that equitable relief will require does not constitute "legally relevant" harm. *Ramirez*, 2021 WL 4284530, at *13 ("Because the government has no interest in acting unlawfully, and because the public has an interest in having its government follow the law, . . . [t]he question is not how much work it would take to comply with the proposed injunction, but instead what level of interest the public and . . . the government have in maintaining the status quo verses obeying the proposed injunction.").

This Court further notes, however, that in *Florida Power & Light*, the Supreme Court did not suggest that a court must always remand in lieu of issuing injunctive or declaratory relief (including vacatur), but rather only contrasted remand proceedings

---

[51] The government's position is reminiscent of a classic scene from *My Cousin Vinny* (20th Century Fox 1992), in which the fictional Judge Chamberlain Haller tells defense attorney Vinny: "It appears to me that you want to skip the arraignment process, go directly to trial, skip that, and get a dismissal."

[52] *See also* Eidelson, *supra* note 13, at 1771 (arguing that *Regents* "[r]eformulat[ed] *Chenery* [*I*] as an accountability-forcing rule" and that, as a result, "the Court's opinion suggests that 'prejudicial error' does not turn solely on the likelihood of the agency's reinstating the same decision"). *But see id.* at 1802 ("*Regents*' accountability-forcing logic suggests that the classic benefit of remand without vacatur—avoiding interim changes for affected parties—is a major strike against that remedy as well.").

with *de novo* proceedings in an APA matter.  470 U.S. at 744.  The Supreme Court did nothing more than admonish "[t]he reviewing court [that it] is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."  *Id.* ("The APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action . . . .").[53]  In other words, neither *Regents* nor *Florida Power & Light* precludes vacatur or other injunctive relief.  Rather, a trial court possesses discretion to issue an injunction where the traditional injunctive relief factors are met.  *See PGBA*, 389 F.3d at 1226–27.

Here, a remand without vacatur of the Army's contract award decision is appropriate because IAP does not pursue an order enjoining the procurement, because the balance of harms counsels against such an order, *see IAP Worldwide Servs.*, 2022 WL 1021781, at *50 (discussing harm declaration), and because, in any event, there is a reasonable possibility that the government can justify its decision not to engage in discussions, *see Haw. Longline Ass'n*, 288 F. Supp. 2d at 10 ("A court's decision to remand without vacatur is determined, in no small part, by considering whether the deficiencies that pervade the agency's actions are likely to be rectified."); *Allied-Signal*, 988 F.2d at 150–51 (remand without vacatur is sometimes appropriate, depending on the "seriousness" of the agency error and the "disruptive consequences" of vacatur (quoting *Int'l Union*, 920 F.2d at 967)).

That said, and consistent with the rationale underlying *Florida Power & Light*, the government cannot forever avoid vacatur or other injunctive relief by seeking infinite remands.  *See Earth Island Inst.*, 494 F.3d at 770 (rejecting further "remand for more studies" and instead agreeing "with the district court that the government's intransigence in following Congress's mandate renders this case one of the rare circumstances where generic remand is not appropriate"); *see also Tippins v. United States*, 157 Fed. Cl. 284, 291 (2021) ("Rote remand scenarios . . . only encourage agency decision-makers to initially avoid articulating justifications in any degree of detail.  Why provide a full explanation of the agency's reasoning if, when later challenged, a second opportunity is routinely provided to supply a more fulsome rationale?").  In other words, at some point, "[f]or the legal error identified . . . , vacatur is clearly warranted."  *Long Island Power Auth. v. FERC*, 27 F.4th 705, 717 (D.C. Cir. 2022) ("The 'seriousness' of agency error turns in large part on 'how likely it is the agency will be able to justify its decision on remand.'" (quoting *Heartland*, 566 F.3d at 197)); *see also Comcast Corp. v. FCC*, 579 F.3d 1, 9 (D.C. Cir. 2009) (the equitable factor of disruptive consequences matter "only insofar as the agency may be able to rehabilitate its rationale").  And where a statutory or regulatory provision requires a particular outcome, this Court may order an agency to act.  *See Long Island Power Auth.*,

---

[53] Moreover, "[b]ased on [*Florida Power & Light*] and a court's equitable powers in general, Circuit courts have upheld district court decisions to remand with specific instructions to the agencies in cases brought under the APA."  *Miccosukee Tribe*, 2008 WL 2967654, at *41; *see also* 28 U.S.C. § 1491(b)(2) (referring to "any relief").

27 F.4th at 717 ("[The agency] cannot rehabilitate its preferred interpretation on remand.").

In this case, whether the Court ultimately will have to issue an injunction ordering the agency to establish a competitive range or to conduct discussions remains to be seen. The government itself, however, at the outset of this case, recognized the possibility of injunctive relief.  The Court reminds the government — as did Vectrus, Intv. Supp. Br. at 5–6 — that the government previously agreed with IAP as follows:

> [T]he Army intends to proceed with performance of the challenged contract awarded to Vectrus . . . , with performance to re-commence on July 16, 2021, upon expiration of the current bridge contract.  In exchange, if plaintiff, [IAP], is successful on the merits, and the Court declares the award to Vectrus unlawful, the Government agrees to promptly act in accordance with the Court's order and agrees that any new contract award will be for the entire period of performance covered by Solicitation No. W91RUS19R0018, subject to the Government's actual needs and available funding.

> The parties also agree that plaintiff's claims regarding award of the . . . contract [at issue] are not in any way limited or jeopardized by performance of the new contract as described and no party shall argue that the award and performance prevents the Court from providing appropriate injunctive relief consistent with the Court's bid protest authority in response to IAP's protest.

ECF No. 11 at 1–2.

The fact that this Court has an independent duty to consider national security is, in part, why an otherwise improper award — based on the Army's failure to follow DFARS 215.306 — will remain in place, at least for now.  *See* 28 U.S.C. § 1491(b)(3) ("In exercising jurisdiction . . . , the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action."); *IAP Worldwide Servs.*, 2022 WL 1021781, at *50 (crediting harm declaration).  On remand, the Army should consider the foregoing, jointly-made representations to this Court, particularly if the Army concludes that the timing of any new agency decision is significant.

### III.   Prejudice Redux

In the course of opposing equitable relief, the government suggests that IAP cannot demonstrate irreparable harm because IAP has not demonstrated prejudice.  Def. Supp. Br. at 8 (citing *G4S Secure Integration LLC v. United States*, -- Fed. Cl. --, 2022 WL 1053667 (2022)).  The Court writes further here to amplify its explanation of why the Army's arbitrary and capricious conduct is prejudicial to IAP, and why the Court's selected remedy is narrowly tailored to address that prejudice.

This Court analyzes prejudice with respect to the merits of a plaintiff's complaint — as opposed to standing purposes — with the Federal Circuit-prescribed lens:

> We review bid protest cases according to the standards in 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4).  Section 706 instructs courts that "due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.  That rule calls on courts to apply the "same kind of 'harmless-error' rule that courts ordinarily apply in civil cases."  *See Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (discussing identical language in 38 U.S.C. § 7261(b)(2) and noting that "Congress intended [that statute] . . . to 'incorporate a reference' to the APA's approach").  Similarly, the federal harmless error statute instructs courts to disregard "errors or defects which do not affect the substantial rights of the parties."  28 U.S.C. § 2111. . . . [T]o prevail in its bid protest, [a plaintiff] must "show a significant, prejudicial error in the procurement process," meaning it must show *that there is a greater-than-insignificant chance* that [the agency] would have issued [an] RFQ as a set-aside for small businesses had it not committed the alleged errors. [*Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)].

*Am. Relocation Connections, L.L.C. v. United States*, 789 F. App'x 221, 228 (Fed. Cir. 2019) (first and second alterations in original) (emphasis added).

In *American Relocation Connections, L.L.C. v. United States*, the plaintiff-appellant, American Relocation Connections, L.L.C. ("ARC"), argued that Small Business Administration ("SBA") regulations required Customs and Border Protection ("CBP") to consult with the SBA during the market research phase for a particular request for quotations ("RFQ") and further "allege[d] that if that consultation had occurred, CBP would have likely issued the . . . RFQ as a set-aside for small businesses."  789 F. App'x at 227.  The Federal Circuit concluded that while the plaintiff had standing to pursue its claims, the government, on the merits, did not commit prejudicial error.  *Id.* at 228.

Rather, the court "agree[d] with the Court of Federal Claims that ARC cannot show that CBP might have issued the . . . RFQ as a set-aside for small businesses even if it had consulted with the SBA." *Id.* Applying the "clearly erroneous" standard of review to the trial court's findings of fact, the Federal Circuit held that "even if CBP had consulted with the SBA during its market research, it would not have issued the [challenged] RFQ as a small business set-aside because there were not enough qualifying small businesses to compete under the applicable [North American Industry Classification System ("NAICS")] code." *Id.* at 228–29 (concluding that "ARC fails to point to any record evidence that suggests otherwise"). Moreover, because the plaintiff failed to appeal CBP's NAICS code designation, ARC "waived any challenge to the NAICS code and [could not] now claim that CBP should or would have chosen a different NAICS code had it consulted with the SBA." *Id.* at 229 ("CBP's choice of NAICS code 531210 is fatal to ARC's claim of prejudice here.").

IAP meets the Federal Circuit's prejudice test articulated in *American Relocation Connections* for the simple reason that "there is a greater-than-insignificant chance" that, based on the record evidence, the Army would have established a competitive range and conducted discussions, including with IAP, had the Army correctly applied DFARS 215.306. *IAP Worldwide Servs.*, 2022 WL 1021781, at *35–39.[54] In particular, this Court made the following critical factual findings in siding with IAP on the merits of Count I of its amended complaint: (1) "the mere existence of the draft [evaluation notices ("ENs")] tends to demonstrate" that discussions were warranted; (2) that the "cost team's report strongly suggested a need for discussions"; (3) "the ENs . . . were updated, inexplicably, as late as December 22, 2020, just days before the Army formally notified Vectrus of its award"; (4) an evaluation panel "developed draft ENs specifically addressing the weaknesses, deficiencies, and risks that culminated in the Army's finding that IAP's proposal was not awardable"; (5) that "there is nothing in the record supporting the government's implicit assertion that there was some inherent obstacle" to IAP's addressing the ENs; and (6) "the Army's Acquisition Plan for the procurement at issue anticipated that the Army would conduct discussions" as did the Source Selection Plan. *Id.*

APA prejudice rules, consistent with those the Federal Circuit adopted in *American Relocation Connections*, 789 F. App'x at 228, similarly support this Court's conclusion that the Army's failure to properly apply the DFARS provision at issue constituted legally cognizable prejudice to IAP. For example, the D.C. Circuit repeatedly has held that "an

---

[54] *See also Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.*, 16 F.4th 1130, 1137–38 (5th Cir. 2021) (rejecting agency's "statement [as] conclusory, unsupported, and thus wholly insufficient"); *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 562–63 (D.C. Cir. 2010) ("[W]e do not defer to the agency's conclusory or unsupported suppositions." (alteration in original) (quoting *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004))).

utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sprint Corp. v. FCC*, 315 F.3d 369, 376 (D.C. Cir. 2003) (quoting *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 96 (D.C. Cir. 2002)). The Federal Circuit has cited that D.C. Circuit line of cases with approval. *See Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1384 n.17 (Fed. Cir. 2017) (citing *Sprint Corp.*, 315 F.3d at 376). In *Mid Continent Nail Corp. v. United States*, the Federal Circuit held that an agency's "failure to comply with the APA was not a mere technical defect," reasoning that although "[t]here [wa]s considerable uncertainty as to the effect of this failure," the mere fact that it "*could well have* affected the result" of the agency's challenged determination was sufficient to constitute prejudice. *Id.* at 1384–85 (emphasis added). This Court "cannot brush aside" the Army's ignoring DFARS 215.306 "and determine that it was harmless error, because there is no way for the court to determine" that IAP "experienced no harm[.]" *Accrediting Council for Indep. Colls. & Schs. v. DeVos*, 303 F. Supp. 3d 77, 107 (D.D.C. 2018) (quoting *Level the Playing Field v. Fed. Election Comm'n*, 232 F. Supp. 3d 130, 143 (D.D.C. 2017)) (acknowledging the harmless error rule contained in 5 U.S.C. § 706 but finding cognizable prejudice where government agency failed to consider "information that was indisputably relevant").

The fact that the government already more or less presumes the outcome of the Court's equitable relief, *see* Def. Supp. Br. at 9, does *not* permit a conclusion of harmless error now, *see Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 95 (D.C. Cir. 2012) ("[W]e strongly reject [the agency]'s claim that the challenged errors are harmless simply because of the pendency of a properly-noticed final rule. Were that true, agencies would have no use for the APA when promulgating any interim rules. So long as the agency eventually opened a final rule for comment, every error in every interim rule—no matter how egregious—could be excused as a harmless error."); *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41 (D.C. Cir. 1977) ("[A] procedural error is not made harmless simply because the [plaintiff] appears to have had little chance of success on the merits anyway." (first citing *Bell v. United States*, 366 U.S. 393, 413–14 (1961); and then citing *Gratehouse v. United States*, 512 F.2d 1104, 1108 & n.3 (Ct. Cl. 1975))).

The government's reliance on *G4S Secure Integration LLC v. United States* is misplaced. In that case, Judge Hertling explained:

> In determining whether the plaintiffs have been prejudiced on the merits, the question is not whether the agency could possibly reach another result if it were to recompete a solicitation. The question is whether the plaintiffs "show that there is a greater-than-insignificant chance" that the agency

would reach a different result "had it not committed the alleged errors."

*G4S*, 2022 WL 1053667, at *6 (quoting *Am. Relocation Connections*, 789 F. App'x at 228). The undersigned concurs wholeheartedly with that formulation, but the facts of *G4S* are not remotely similar to those at issue here. In *G4S*, Judge Hertling concluded that the government's "misapplication of FAR 52.204-7 did not prejudice the plaintiffs" because neither the plaintiffs nor the awardee were registered in the System for Award Management ("SAM") as required by that regulation. *Id.* at *5. Accordingly, "[t]he SAM-registration status of neither [the awardee] nor the plaintiffs affected [the State Department]'s award decision." *Id.* Because "neither offeror gained a competitive advantage in the procurement resulting from the status of its SAM registration[,] . . . there was therefore no connection between the error the plaintiffs asserted and their failure to secure the contract." *Id.*

Judge Hertling's formulation of the prejudice standard in *G4S* reflects that of the Federal Circuit in *Oracle America, Inc. v. United States*:

> As the Supreme Court, this court, and other circuit courts have recognized, principles of harmless error apply to judicial review of agency action generally. A remand is unnecessary when the error in question "clearly had no bearing on the procedure used or the substance of decision reached"; if there is no reason to believe that the decision would have been different; if it is clear that the agency would have reached the same result; if the result is "foreordained"; if the court is not "in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed"; or where there is no "significant chance that but for the error, the agency might have reached a different result."

975 F.3d 1279, 1290–91 (Fed. Cir. 2020) (citations omitted), *cert. denied*, 142 S. Ct. 68 (2021); *see also Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090–91 (9th Cir. 2011) (citing cases and holding that courts should find harmless error only where the error "*clearly* had *no bearing* on the procedure used or the substance of decision reached" (emphasis added) (quoting *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir. 1992))).

In this case, IAP demonstrated an error — the Army's failure to properly consider DFARS 215.306 — that may have had a bearing on the ultimate award decision. And here, in contrast to the facts in *G4S*, there is a "connection between the error" and the competitive injury to IAP: had the Army correctly considered and applied DFARS

215.306, there is a "greater-than-insignificant chance" that IAP would have had the opportunity to submit a FPR during discussions and be considered for a contract award. *G4S*, 2022 WL 1053667, at *5–6. The Court further reiterates that it cannot, following *Regents*, consider the government's *post hoc* explanations to conclude that a remand will be futile. 140 S. Ct. at 1908–09; *see also Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 133 (2d Cir. 2022) (discussing *Regents* and holding that "[i]n a lawsuit brought under the APA, it was not appropriate for the District Court to try to salvage [an agency's decision] by supplying an explanation or accepting one that the agency formulated while litigating this lawsuit"); *Mid Continent Nail Corp.*, 846 F.3d at 1385 n.18 ("[A]gency attempts to cure procedural defects *ex post* are not generally accepted as validating prior missteps."). To the contrary, to adopt the government's position would require this Court to improperly "mak[e] a finding of fact not previously made by the agency." *Oracle Am.*, 975 F.3d at 1291–92 (applying clearly erroneous standard of review to trial court's fact findings regarding prejudice).

The government further notes, *see* Def. Supp. Br. at 8, that Judge Hertling in *G4S* applied the Federal Circuit's decision in *Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2004), but as Judge Hertling explained, "[t]he plaintiff in *Bannum* had advocated for a different calculation of its score which, even if employed, would not have allowed the plaintiff to be awarded the contract," *G4S*, 2022 WL 1053667, at *6. Again, IAP's case here is readily distinguishable. While the plaintiff in *Bannum* could not have been awarded the contract even if it were correct about the procurement errors, IAP, by definition, would be back in the game with a FPR — a possible, if unlikely, outcome of the correct application of DFARS 215.306. In other words, Judge Hertling is correct that a plaintiff may not claim prejudice based on the fact that a do-over might permit the plaintiff to improve its competitive position. *Id.* Rather, a plaintiff must show that it is *entitled* to the remedy sought by showing a connection between the agency's error and the competitive injury, such that the relief to address the error and injury may change the outcome of the procurement. *Id.* at *5. IAP has met that burden here, as the Court already has found.[55]

In sum, the Army's "assertions here are nothing more than merits arguments disguised as a discussion of harmless error." *Jicarilla Apache Nation v. U.S. Dep't of Interior*,

---

[55] The Federal Circuit's decision in *Office Design Group v. United States*, 951 F.3d 1366 (Fed. Cir. 2020), further supports this Court's conclusion. There, the Federal Circuit upheld our Court's *factual finding* that the plaintiff "was *not* prejudiced by [an agency's] disparate treatment" because "[e]ven if [the agency had] awarded [plaintiff] the additional 6 points it afforded to the awardee, [plaintiff's] technical score would only increase to 18 points, well below the acceptable 40-point threshold for award." *Id.* at 1374 (emphasis added). As this Court demonstrated *supra*, the administrative record here does *not* support the conclusions that: (1) discussions should not have been conducted; (2) even if discussion were conducted, IAP would not be included in the competitive range; or (3) IAP would have been unable to cure its deficiencies in a FPR. *See IAP Worldwide Servs.*, 2022 WL 1021781, at *35–39.

613 F.3d 1112, 1121 (D.C. Cir. 2010). But, as the Supreme Court has held, "[t]he Army cannot rely upon something that never happened, upon an administrative determination that was never made, even if it be assumed that such a determination would have been permissible under the statute and supported by the facts." *Bell*, 366 U.S. at 413. In contrast, if the Court were to subscribe to the government's harmless error argument in this case, "the government would have us virtually repeal [the] requirements" of DFARS 215.306 because the "government could [just] skip those procedures . . . and then be protected from judicial review" unless a plaintiff could predict the outcome of the competitive range determination and/or resulting discussions. *Sugar Cane Growers*, 289 F.3d at 96 ("[A]n utter failure to comply with notice and comment cannot be considered harmless if there is any uncertainty at all as to the effect of that failure."). That cannot be the rule.[56]

In this case, IAP has not demonstrated irreparable harm of a sufficient nature to justify vacating the Army's contract award, but IAP has demonstrated sufficient prejudice to support a remand. *See PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." (citing *Chenery I*, 318 U.S. at 94–95)). Moreover, the "public interest [is] in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (alteration in original) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Additionally, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Id.* at 560 (alteration in original) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)).

## IV.     An Award of Bid and Proposal Costs Are Not Justified at This Stage

The Court agrees with the government and Vectrus, *see* Def. Supp. Br. at 9–10; Intv. Supp. Br. at 10, that bid and proposal costs should not be awarded unless IAP is able to demonstrate that its initial proposal was somehow unnecessary or wasted, *see, e.g., A Squared Joint Venture*, 149 Fed. Cl. at 232 ("To recover bid preparation and proposal costs, a protestor must demonstrate that the agency's prejudicial error 'caused the protester to incur unnecessarily bid preparation and proposal costs.' . . . If these costs were 'not rendered a needless expense by defendant's erroneous conduct, but rather were lost due to' some other reason, the bid preparation and proposal costs are not recoverable." (quoting *Reema Consulting Servs., Inc. v. United States*, 107 Fed. Cl. 519, 532 (2012)));

---

[56] *See* Eidelson, *supra* note 13, at 1771–72 ("[T]o the extent that the prejudice question does depend on an assessment of what the agency would in fact do, *Regents* teaches that neither the agency's representations, nor the fact that its chosen course would be legally permissible, suffices to resolve that question.").

*AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 380 ("Bid and proposal preparation costs are a form of reliance damages which are properly awarded when costs have been wasted."), *opinion clarified,* 87 Fed. Cl. 654 (2009); *IAP Worldwide Servs., Inc. v. United States*, 141 Fed. Cl. 788, 809 (2019) ("[B]id and proposal costs . . . are not unnecessarily incurred when a contractor 'retains the opportunity to compete for the [contract].'" (quoting *Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 330 (2015))).

Particularly given that IAP's initial proposal was rated as "Unacceptable," *IAP Worldwide Servs.*, 2022 WL 1021781, at *7–8, *10, the Court will not award IAP its bid and proposal costs, at least not at this stage of the case. *See* Intv. Supp. Br. at 10 (depending on the remand outcome, "award of [bid and proposal] costs to IAP may be appropriate here"). On the other hand, if the Army, on remand, decides to issue a new source selection decision, that may be grounds to award IAP its bid and proposal costs. *See id.; see also CNA Corp. v. United States*, 83 Fed. Cl. 1, 9 (2008) ("[W]hen performance has begun or reevaluation is not feasible, bid preparation costs are appropriate for award." (citing *Beta Analytics Int'l, Inc. v. United States*, 75 Fed. Cl. 155, 159 (2007))), *aff'd sub nom. The CNA Corp. v. United States*, 332 F. App'x 638 (Fed. Cir. 2009).

## V.    CONCLUSION

For the above reasons, pursuant to 28 U.S.C. § 1491(a)(2), (b)(2), and RCFC 52.2, the Court hereby **STAYS** and **REMANDS** this case to the Army to decide in the first instance how to apply DFARS 215.306 given this Court's interpretation of that provision and the facts and circumstances of the procurement at issue, consistent with the Court's prior decision in this case. The Army, during the remand period, retains discretion to decide whether:

1. The Army stands behind its October 23, 2020 source selection decision, awarding the contract to Vectrus without discussions, and thus will issue a supplemental decision elaborating on or amplifying the Army's prior decision not to engage in discussions; or

2. The Army will issue a new decision, either

    a. establishing a competitive range in order to conduct discussions, ultimately resulting in a new contract award decision; or

    b. replacing its previous contract award decision with a new contract award decision that declines to engage in discussions but is supported by a new explanation and further development of the administrative record.

On or before **Friday, June 24, 2022**, the government shall file a status report indicating which option above it will select.

If the government selects the first option, then the government shall file with the Court, on or before **Monday, August 8, 2022**, an additional explanation, elaborating on or amplifying information contained in the contemporaneous administrative record already on file with the Court.  Alternatively, if the government selects the second option, then the government shall file, on or before **August 8, 2022**, either the new competitive range determination or the new contract award decision, along with any supporting documentation.  During this remand period, neither the government nor Vectrus are enjoined from proceeding with the contract at issue.

On or before Monday, **August 15, 2022**, the parties shall file a joint status report, indicating whether there is a need for further proceedings in this case, and, if so, proposing a schedule for such proceedings.

Notwithstanding RCFC 52.2(b)(2), the Clerk of the Court need not serve this opinion and order; rather, counsel for the United States is directed to provide a copy of this opinion and order to the cognizant contracting officer, which shall constitute service pursuant to that Rule.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
**Matthew H. Solomson**
**Judge**